[Civ. No. 25846. Second Dist., Div. One. May 21, 1962.]

SAN PEDRO PROPERTIES, INC., Plaintiff and Appellant, v. SAYRE AND TOSO, INC., et al., Defendants and Respondents.

Alvin R. Isenberg for Plaintiff and Appellant.

Kirtland & Packard, Robert L. Wilson and Judith O. Hollinger for Defendants and Respondents.

FOURT, J.—This is an appeal from a judgment denying the plaintiff recovery under an indemnity agreement.

The plaintiff was engaged in land development activities including subdividing and the construction and sale of houses. On or about November 4, 1955, Sayre and Toso, Inc., issued a "Surveyors and/or Civil Engineers Errors and Omissions Insurance" policy on behalf of certain underwriters employed

at Lloyd's, London, in favor of Raymond L. Quigley and others. See footnote 1 for provisions thereof in part.

On December 5, 1955, the plaintiff entered into a contract

---

[1]"Surveyors and/or Civil Engineers Errors and Omissions Insurance Schedule

---

The name of the Assured is Raymond L. Quigley dba South Bay Engineering Co. and/or Quigley, Davis & Clark Partnership

---

The address of the Head Office of the Assured is 43 Malaga Cove Plaza, Palos Verdes, California

---

The premium is
Six Hundred Ninety Six and No/100 Dollars ($696.00)

---

The sum insured is
Twenty Five Thousand Dollars

---

The period of the insurance is from November 4, 1955 to November 4, 1956, both days inclusive.

---

The date of the proposal is
January 30, 1956

---

The person or persons upon whom service of process may be made is/are
Gaynor De Witt or Toplis & Harding, Wagner & Glidden, Inc.

---

" . . . . . . . . .

"Now Therefore this Insurance, subject to the terms and conditions hereof, indemnifies the Assured against any claim or claims for breach of duty as Surveyors and/or Civil Engineer* which may be made against them during the period stated in the said Schedule by reason of any negligent act, error or omission, whenever or wherever committed or alleged to have been committed, on the part of the Assured or any person who has been, is now, or may hereafter during the subsistence of this Insurance be employed by the Assured, in the conduct of any business conducted by or on behalf of the Assured in their capacity as Surveyors and/or Civil Engineers.    *and/or Architects.

Conditions

" . . . . . . . . .

"6. (1) The Assured shall as a condition precedent to their right to be indemnified under this Insurance give to the Underwriters immediate notice in writing
(a) of any claim made against them or
(b) of the receipt of notice from any person of an intention to hold the Assured responsible for the results of any breach of duty as Surveyors and/or Civil Engineers, and shall in either case, upon request, give to the Underwriters such information as the Underwriters may reasonably require.
(2) If during the subsistence hereof the Assured shall become aware of any occurrence which may subsequently give rise to a claim against them by reason of any negligent act, error or omission and shall during the subsistence hereof give written notice to the Underwriters of such occurrence said claim which may subsequently be made against the Assured arising out of that negligent act, error or omission shall be

with South Bay Engineering Company (hereinafter sometimes referred to as South Bay) and others to perform certain architectural, surveying and civil engineering work with reference to the grading and other work on a tract of land in Santa Monica.

It was asserted that the work which was performed by South Bay was not properly done and on May 27, 1957, a notice was given to South Bay to the effect that those for whom the work had been performed claimed loss and damage as a result of the negligent performance of the work in question. On May 28, 1957, South Bay gave notice of the claim to the defendants.

At no time was there a request by South Bay or Quigley for

deemed for the purposes of this Insurance to have been made during the subsistence hereof.

(3) If the Underwriters cancel or refuse to renew this Insurance, any claim made against the Assured within one year after the termination hereof by reason of any negligent act, error or omission committed or alleged to have been committed before the termination hereof shall be deemed for the purposes of this Insurance to have been made during the subsistence hereof.

"

"9. This Insurance may be cancelled on the customary short rate basis at any time at the written request of the Assured. This Insurance may also be cancelled, with or without the return or tender of the unearned premium, by or on behalf of the Underwriters by delivering to the Assured or by sending to the Assured by mail, registered or unregistered, at the address of the Head Office of the Assured stated in the said Schedule, not less than ten days written notice stating when the cancellation shall be effective, and in such case the Underwriters shall refund the paid premium less the earned portion thereof on demand.

"If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction hereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

"

"Said insurance is made and accepted subject to the foregoing stipulations and conditions, and to the stipulations and conditions printed on the back hereof, which are hereby made a part of said insurance, together with such other provisions, stipulations and conditions as may be endorsed on said Certificate of Insurance or added thereto as therein provided.

ATTACHED TO AND FORMING PART OF CERTIFICATE NO. LC 59460
LLOYD'S, LONDON
ISSUED TO: RAYMOND L. QUIGLEY, ET AL
DATED: LOS ANGELES, CALIFORNIA

UNDERWRITERS AT LLOYD'S, LONDON
BY: SAYRE AND TOSO, INC.

By_____ "

a renewal of the certificate of insurance, nor did Lloyd's or the other defendant at any time cancel the insurance or refuse to renew it.

On April 9, 1958, the plaintiff brought an action in the Superior Court of Los Angeles County against South Bay and Quigley to recover damages for the losses sustained by plaintiff resulting from the negligent performance of the engineering work. The defendants refused to defend South Bay and Quigley on the claim of plaintiff in that action. There was a judgment rendered in favor of plaintiff against South Bay and Quigley in the amount of $15,879.24 with $19.50 costs.

Plaintiff then filed this action against the present defendants. A trial was had and judgment was rendered in favor of the defendants and plaintiff has now appealed.

Appellant asserts that during the year 1956 and in the early part of 1957 the work by South Bay was negligently performed and resulted in the damage to the plaintiff. In effect appellant argues that the contract should be interpreted to mean what South Bay states it thought it meant when it purchased the insurance. It is claimed that the policy of insurance is ambiguous and needs interpretation.

There can be no doubt that the parties to the insurance contract were permitted under the circumstances to contract as they pleased. [■ The insurer had the right to limit the coverage of the policy in plain understandable language and in conformity with standard practices. (See *Oakland Stadium* v. *Underwriters at Lloyd's, London,* 152 Cal.App.2d 292, 296 [313 P.2d 602]; *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914].) ■ It is stated in 27 Cal.Jur.2d, section 267, pages 757-758, as follows:

"The purpose of an insurance contract is contingently to provide the insured with indemnity for losses that may arise from a particular risk or risks, which should be specified in the policy. ■ The insurance company is at liberty to select the character of the risk it will assume; and it is not liable except on proof that the loss was within the terms of the policy, for these terms determine the measure of the insurer's liability."

■ ■ A reading of the policy indicates that South Bay was indemnified against ". . . any claim or claims for breach of duty as Surveyors . . . which may be made against them during the period stated in the Schedule. . . ." The schedule

referred to provides that "The period of the insurance is from November 4, 1955 to November 4, 1956, both dates inclusive."

It is further noted that the claim which was made by South Bay to the defendants was made on May 28, 1957. The claim for the loss and damage brought about by South Bay's carelessness was made to South Bay on May 27, 1957. There was on the face of it no claim made by anyone during the period of the coverage or during "the period stated in the said schedule." It would appear that the policy covers claims which were made during the period stated in the schedule, namely from November 4, 1955, to November 4, 1956, and no other, unless the policy were renewed. The word "claim" as used in the insuring clause is used as a noun.

" ' "The word [claim] is derived from the Latin clamor, meaning a call, a demand. In its ordinary sense the term imports the assertion, demand or challenge of something as a right; the assertion of a liability to the party making it to do some service or pay a sum of money. . . ." ' " (*Supera* v. *Moreland Sales Corp.* (1938) 28 Cal.App.2d 517, 521 [82 P.2d 963].)

"A 'claim' refers to a debt due the claimant. (11A Cal. Jur. 485.) It is a money demand." (*Tanner* v. *Estate of Best* (1940) 40 Cal.App.2d 442, 445 [104 P.2d 1084].)

"Claim" means " 'To ask for, or seek to obtain, by . . . right, or supposed right; to demand as due.' " (*People* v. *Teitelbaum* (1958) 163 Cal.App.2d 184, 212 [329 P.2d 157].)

A claim connotes an assertion of a legal right, as distinguished from a recognition of that right.

"Claim" is not synonomous with "accident" or "occurrence" under the circumstances of this case.

South Bay was given the opportunity to extend protection to claims made after the stated period of coverage had it been so minded. See condition 6, subdivision (2) in the footnote. South Bay did not request a renewal of the insurance. Had it done so the Underwriters under condition 6, subdivision (3) could not have refused to renew the insurance without considering a claim made within one year after the termination of the insurance as having been made during the subsistence thereof.

The parties here did not rely upon any abstract principle of equity when the contract was entered into but to the contrary they set down in writing an agreement in definite terms,

which brought about a definite well-expressed legal obligation and no more.

It is also true in this case that there was made no allegation or showing that South Bay ever paid the judgment which was rendered against it in the first instance. In other words, payment on the judgment against South Bay has not been made and the indemnitor is not liable until it is paid. Civil Code section 2778 reads in part as follows:

"2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof."

In *Ramey* v. *Hopkins*, 138 Cal.App. 685, 686 [33 P.2d 443], it is stated with reference to the code section above mentioned as follows:

"Upon this appeal three questions are tendered for our consideration, only one of which needs to be answered, to wit: May an obligee upon an indemnity against loss or damages, recover against the indemnitor without proving payment of the alleged loss or damage for which redress is sought?"

There is as heretofore indicated no allegation in the complaint to the effect that payment upon the judgment has been made, there is no finding by the court that payment has been made. ▉ See also 24 California Law Review 194, where it is stated:

"In covenants of indemnity against loss, damages are restricted to the actual loss suffered and not the amount of liability. They 'must be of the nature contemplated by the agreement as well as the proximate consequence of the cause stated.' [Citing authorities.] The indemnitor is only liable for that which the indemnitee was legally bound to pay or satisfy. [Citing case.] The mere claim that a prudent settlement has been made will not subject the indemnitor to liability [citing case], nor will the recovery of a judgment without satisfaction [citing cases], nor the mere giving of a promissory note unless accepted as payment. [Citing authorities.]"

For the reasons stated the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.