123 N.J. Super. 353 (1973)
303 A.2d 91
ALBERT C. JONES, t/a ALBERT C. JONES ASSOCIATES, PLAINTIFF,
v.
CONTINENTAL CASUALTY COMPANY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 26, 1973.
*354 Mr. Robert A. Porter for plaintiff Albert C. Jones, t/a Albert C. Jones Associates (Messrs. Hartman, Schlesinger, Schlosser & Faxon, attorneys).
Mr. Arthur Montano for defendant Continental Casualty Company (Messrs. Kisselman, Deighan, Montano & Summers, attorneys).
BISCHOFF, J.S.C.
Plaintiff, a professional engineer, seeks a judgment declaring that he has coverage under a policy of insurance issued by defendant and called "Architects and Engineers Policy." The initial policy issued by this defendant was for a period commencing February 23, 1965 to February 23, 1966, and thereafter the policy was renewed yearly until February 23, 1970. By an amendment to the last policy, the policy was amended to include the period from February 23, 1969 to April 5, 1970.
*355 The first policy, as noted, was issued in 1965. Plaintiff testified he read it at that time but did not understand all of its provisions and did not seek any explanation of the terms.
Plaintiff discontinued coverage by defendant-company in 1970 when he was in financial difficulties. He went into receivership and was unable to pay the premiums charged. The premium for the last year of coverage was $10,000.
The facts which call for this declaratory judgment are as follows.
On August 8, 1966 the City of Millville engaged plaintiff as a consulting engineer for the construction of a multi-million dollar sewer plant. Bids were received and the city entered into a contract for the construction of the sewer plant with Pagano Construction Company on December 17, 1968. Several of the large tanks that composed the sewer treatment plant began to settle, and on March 12, 1970 plaintiff notified the contractor that the final settling tanks were not level and directed him to correct the deficiency. Thereafter the contractor instituted a lawsuit on a book account asking for payment of the balance of the money due him. Defendant in that action was the City of Millville, who counterclaimed for the costs of correcting the alleged improper work. Plaintiff Jones was not a party to the proceeding until Pagano Construction Company joined him as a third-party defendant on August 18, 1971. Receipt of the suit papers that day was Jones' first knowledge of the claim or suit against him. This was more than 16 months after the expiration of the last policy of insurance issued by defendant. The suit papers were forwarded by plaintiff to defendant the next day. They were received by defendant on August 23, 1971. Defendant then forwarded the papers to the law firm of Kisselman, Deighan, Montano, King and Summers, who appeared in defense of a motion on August 27, 1971 in Bridgeton.
An investigator for defendant company went to the office of plaintiff in Mount Holly and received pertinent information pertaining to the claim, and attorneys from the firm of *356 Kisselman, Deighan, Montano, King and Summers attended a meeting with the City Commissioners of Millville on August 31, 1971. Other than the writing of one additional speed letter on September 8, 1971, no action was taken by defendant in connection with the defense of the matter. No answer was filed. The suit papers were returned to plaintiff. Coverage was denied. Plaintiff was informed he should obtain his own counsel to defend the matter.
This lawsuit revolves around the interpretation to be given to the following provisions of the policy, it being the contention of defendant that the claim and lawsuit in question fall outside of the policy period as that is defined in the policy itself.

IV. Policy Period, Territory.

(a) During the Policy Period.
The insurance afforded by this policy applies to errors, omissions or negligent acts which occur * * * during this policy period if claim therefor is first made against the insured during this policy period.

(b) Prior to the Policy Period.
The insurance afforded by this policy also applies to errors, omissions or negligent acts which occur within the United States of America, * * * prior to the effective date of this policy if claim therefor is first made against the insured during this policy period and if all of the following requirements are present:
(1) the error, omission, or negligent act was also insured by this Company under the prior policy (as defined below) * * *
(2) no insured, at the effective date of the prior policy (as defined below), had any knowledge of a pending claim which might be made against any insured or had any knowledge or any circumstance which may reasonably be expected to create a claim against any insured.
Prior policy (for the purpose of this insuring agreement) means the combined total of all architects' and/or engineers' professional liability policies issued by this Company beginning with the first architects' and/or engineers' professional liability policy followed continuously by successive architects' and/or engineers' professional liability policies, the last of which expired on the effective date of this policy. [Emphasis supplied]
As noted, the last policy of insurance expired on April 5, 1970; plaintiff's first knowledge of a claim occurred on August 18, 1971.
*357 Plaintiff seeks a declaration that the policy provides coverage on two grounds. First, that defendant, by its actions over the two-week period between the notice of loss received by the company in Philadelphia with receipt of suit papers on August 23 and the return of the suit papers to plaintiff, assumed control and management of the lawsuit to such an extent that it is now estopped to deny its obligation to plaintiff to indemnify and defend.
Second, that the terms of the policy of insurance which exclude coverage for events which occurred during the policy period if notice is not given during said period are invalid as being against public policy.
With respect to the first ground, this court denies plaintiff's contention. Defendant company is entitled to a reasonable time period within which to investigate and determine whether there is coverage under the terms of the policy, so long as its actions do not in any way prejudice the assured. Ebert v. Balter, 83 N.J. Super. 545, 553 (Law Div. 1964); Merchants Ind. Corp. v. Eggleston, 37 N.J. 114 (1962); Liberty Mutual Ins. Co. v. O'Rourke, 122 N.J. Super. 68 (Ch. Div. 1973).
I find that under the circumstances of this case defendant company acted promptly and by its actions did not in any way prejudice its assured. Defendant is not estopped to deny coverage.
With respect to the second ground advanced by plaintiff, it is argued that the period of coverage, as defined in the policy of insurance, violates public policy and is contrary to the reasonable expectations and interests of lay people and the public, and is therefore unreasonable.
Plaintiff argues that unless an assured maintains his insurance continuously with the same company, his insurance is worthless in many respects. In that regard plaintiff points to the situation involving the death or retirement of an assured. In that situation, if defendant's construction is accepted, neither a retiree who has dropped his coverage nor the estate of a deceased assured would be covered for events *358 occurring during a policy period where claim is not made until after the expiration of the policy. Plaintiff further argues that freedom of contract is destroyed under the terms of this policy, because the assured, in order to maintain continuous protection, must continue coverage in the same insurance company.
The type of policy in question has been termed a discovery policy. The distinction between a discovery policy and an occurrence policy was pointed out in the case of Zarpas v. Morrow, 215 F. Supp. 887 (D. Ct. N.J. 1963):
* * * In a "discovery" policy the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurance company during the period of the policy, no matter when the act occurred. In an occurrence policy, the coverage is effective if the negligent or omitted act occurred during the period of the policy, whatever the date of discovery. [Emphasis supplied]
The coverage agreements in this type of policy are quite different from those generally encountered in insurance policies. They are generally employed in professional liability policies.
Defendant, in support of its position, relies heavily on the case of Rotwein v. General Accident Group, 103 N.J. Super. 406 (Law Div. 1968), as well as many cases from other states. However, the terms of the policies of insurance involved in each of the cases relied upon bear close examination.
In Rotwein the policy provision was of the discovery type and read as follows insofar as the period of coverage is concerned:
This policy also applies to any negligent acts, errors or omissions from services rendered during the policy period of any prior policy issued to the Insured, if the Insured has maintained Architect's professional Liability Insurance continuously in force, provided * * * that such claim would have been covered under the said prior policy had it been in effect at the time of the negligent acts, errors or omissions. [Emphasis supplied]
*359 It should be noted that the provisions of the policy there before the court covered losses occurring during the coverage of any prior policy of insurance maintained by the insured.
The court in Rotwein discussed in detail the public policy argument which was made and rejected it. The court held:
* * * plaintiffs, at the time they became the insureds of General Accident, in fact obtained retroactive protection with respect to any negligent acts, errors or omissions attributable to professional services which may have preceded the issuance of the General Accident policy (provided they had other extant insurance), as long as the claim arising from such negligence was reported during the policy period. It has not been shown that such insurance protection is so inadequate or utterly inappropriate to the reasonable needs of a professional architect that it may be considered oppressive or unfair.
Not so in this case. Retroactive insurance coverage existed under the policy of Continental Casualty Company only if there was prior insurance in Continental Casualty.
The court in Rotwein continued:
* * * Plaintiffs have failed to demonstrate that the General Accident insurance policy has any capacity to inhibit or discourage freedom of contract contrary to established notions of public policy, * * *.
In this case, clearly the policy provisions in effect inhibit freedom of contract. In order for plaintiff to maintain coverage or have continuity of coverage, he must continue to have defendant as the insurance carrier. Such provisions do inhibit freedom of action in this field.
In interpreting a provision in a policy of insurance such as this, we must bear in mind the fact that an insurance contract is not a truly consensual arrangement. It is not the result of open and equal bargaining or negotiations. It is available only on a take it or leave it basis. Cooper v. Government Employees Ins. Co., 51 N.J. 86, at p. 94 (1968).
An insured is entitled to the measure of protection necessary to fulfill his reasonable expectations, and the insured *360 should not be subjected to hidden pitfalls in the policy. Gerhardt v. Continental Ins. Cos., 48 N.J. 291, 297 (1966).
As the Supreme Court said in the case of Allen v. Metropolitan Life Ins. Co., 44 N.J. 294 (1965):
While insurance policies and binders are contractual in nature, they are not ordinary contracts but are "contracts of adhesion" between parties not equally situated. [Citations omitted]. The company is expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospective assured is a layman unversed in insurance provisions and practices. He justifiably places heavy reliance on the knowledge and good faith of the company and its representatives and they, in turn, are under correspondingly heavy responsibility to him. His reasonable expectations in the transaction may not justly be frustrated and courts have properly molded their governing interpretative principles with that uppermost in mind * * *. [at 305]
Defendant cites in support of its position the case of San Pedro Properties, Inc. v. Sayre & Toso, Inc., 203 Cal. App.2d 750, 21 Cal. Rptr. 844 (D. Ct. App. 1962). However, an examination of that case discloses that the policy provisions involved are different from those in the policy issued by defendant. The insurance policy in that case provided unrestricted retroactive coverage for any claim or claims for breach of duty "which may be made against them during the period stated in this said Schedule by reason of any negligent act, error or omission whenever or wherever committed." (Emphasis supplied). In addition, the policy covered the insured where claim was first made up to one year after the policy terminated.
Brown Construction Co. v. D & M Mechanical Contr., Inc., 222 So.2d 93 (La. App. 1969), also cited by defendant, concerned itself with the interpretation to be provided to a discovery policy, but again, an examination of the coverage afforded by that policy discloses unrestricted retroactive coverage.
The same observation applies to the policy of insurance under consideration by the court in the case of Zarpas v. Morrow, supra.
*361 No cases have been cited by defendant in support of its position where retroactive coverage was limited, as in this case, to prior coverage by the same insurer and where the coverage ceased upon the termination of the policy period.
It must be borne in mind that the coverage sought herein was required in connection with a multi-million dollar improvement. The public and third parties have interests in the type of insurance coverage that is provided in such circumstances.
Public policy is not a static thing. It changes as a public need requires. Public policy was defined in the case of Allen v. Commercial Casualty Ins. Co., 131 N.J.L. 475 (E. & A. 1944):
Much has been written by text writers and by the courts as to the meaning of the phrase "public policy." All are agreed that its meaning is as "variable" as it is "vague," and that there is no absolute rule by which courts may determine what contracts contravene the public policy of the state. The rule of law, most generally stated, is that "public policy" is that principle of law which holds that "no person can lawfully do that which has a tendency to be injurious to the public or against public good * * *" even though "no actual injury" may have resulted therefrom in a particular case "to the public." It is a question of law which the court must decide in light of the particular circumstances of each case.
The sources determinative of public policy are, among others, our federal and state constitutions, our public statutes, our judicial decisions, the applicable principles of the common law, the acknowledged prevailing concepts of the federal and state governments relating to and affecting the safety, health, morals and general welfare of the public for whom government  with us  is factually established. [Citations omitted; at 477]
Nowhere has the change in public policy in connection with claims been more noticeable in recent years than in the approach of our Supreme Court to the statute of limitations in the field of professional liability. The change of policy in this field first appeared in the case of Fernandi v. Strully, 35 N.J. 434 (1961). The court held that the bar of the statute of limitations in a medical malpractice case, when dealing with a foreign object left in the body during *362 the course of an operation, fairly and justly begins to run when plaintiff knows or has reason to know of the presence of the foreign object and the existence of a cause of action based on its presence. This discovery rule, as applied to the statute of limitations, was thereafter expanded by the Supreme Court to cover a variety of situations. The Supreme Court in Lopez v. Swyer and Danon, 62 N.J. 267 (decided February 20, 1973) described this expanding concept in the following terms:
While Fernandi expressly confined the discovery rule to foreign body malpractice actions, 35 N.J. at 450, 451, subsequent decisions have gone much further and have acknowledged the relevance of the doctrine whenever equity and justice have seemed to call for its application. Thus in New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419 (1968) this court found that plaintiff's cause of action against defendant, a professional engineer and land surveyor, arising from the latter's negligent miscalculation of acreage, did not accrue when the error was made, but rather eleven years later when it was discovered. In Diamond v. N.J. Bell Telephone Co., 51 N.J. 594 (1968) plaintiffs did not discover that defendant's installation of a conduit had apparently damaged their sewer line until nine years after the event. It was held that the statute did not start to run until plaintiffs became aware of the wrong. In Yerzy v. Levine, 57 N.J. 234 (1970), we affirmed a decision of the Appellate Division, 108 N.J. Super. 222 (1970), holding that a patient might sue for injuries resulting from an improper operative procedure, more than two years after the event, if she could establish that she had not previously known, nor could she reasonably have known, that she might have a basis for an actionable claim. See also, Farrell v. Votator Division of Chemetron Corporation, 62 N.J. 111, pp. 115-116 (1973). [at 566]
The Lopez case again dealt with the professional liability of a medical doctor. The court, describing the reason behind this discovery rule, said the following:
The discovery rule is essentially a rule of equity. It has been said that in equity lies its genesis. Owens v. White, 342 F. 2d 817 (9th Cir.1965). Like so many other equitable doctrines it has appeared and is developing as a means of mitigating the often harsh and unjust results which flow from a rigid and automatic adherence to a strict rule of law. On the face of it, it seems inequitable that an injured person, unaware that he has a cause of action, should be *363 denied his day in court solely because of his ignorance, if he is otherwise blameless. Yet such is the result that must follow if the years of the statute are to be inexorably calculated from the moment of the wrong, whether or not the party aggrieved knows or has reason to know that he has a right of redress. Parenthetically, we note that the ignorance of which we speak may be of more than one kind. A person may, for instance, be unaware that he has sustained injury until after the statute of limitations has run. This was true in both New Market Poultry Farms, Inc. and Diamond, supra, where, in each case, the fact of the wrong lay hidden until after the prescribed time had passed. In other cases damage may be all too apparent, but the injured party may not know that it is attributable to the fault or neglect of another. The plaintiffs' claim in this suit falls within the latter category. [at 566]
Public policy in this regard is thus clearly expressed in the judicial decisions (Allen v. Commercial Casualty, supra, 131 N.J.L. at 478) in favor of extending time for making claim or bringing suit for a wrong in the professional liability field. When comparing this clearly expressed public policy with the insurance policy before us, we find that the insurance policy provides for severely limited retroactivity and no prospective coverage for claims made after the expiration of the policy period. This limited coverage is clearly against public policy as it has been developed in this area in recent years by the decisions of our Supreme Court.
This is a court of equity. The restrictions in the insurance policy respecting the time within which claim must be made offends plain principles of justice and fairness. I accordingly hold that insofar as the terms of the policy of insurance attempt to limit coverage under the policies to claims reported during the time period set forth in the schedule of the policy is contrary to public needs and public policy. I further hold that the notice of suit given by plaintiff to defendant was given as soon as practicable under the circumstances, and brought the claim within the coverage of the policy of insurance. Defendant owes to plaintiff both a defense and indemnity, subject to other policy provisions.