383 A.2d 1024.

SAMUEL GEREBOFF *et al. vs.*
THE HOME INDEMNITY COMPANY *et al.*

MARCH 22, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. This action for a declaratory judgment was brought in the Superior Court by Samuel Gereboff and Ralph Northrup, both certified public accountants, against three insurance companies. The plaintiffs seek a declaration that the professional liability insurance policy issued by each defendant covers them for alleged accounting malpractice that occurred in 1968. More specifically, they seek a determination that each defendant is required both to defend a negligence action, based upon that 1968 occurrence, that was brought against the plaintiffs in 1973 and to pay any adverse judgment that may be rendered in that action. The trial justice concluded that none of the policies afforded coverage and entered judgment for each defendant. The plaintiffs appealed.

The case was submitted on an agreed statement of facts.

In July 1968 Frank and John Rao, partners in a wholesale liquor business known as Rao Brothers, requested plaintiffs, their accountants, to prepare a balance sheet for Rao Brothers as of the preceding June 30. In complying with that request, plaintiffs, consistent with their prior dealings with Rao Brothers, relied for their tally of the accounts receivable on figures provided by Eleanor Rao, the partnership's longtime bookkeeper and a relative of the partners. Although not included in the agreed statement, the records in the case indicate that certain business transactions between Frank and John Rao were consummated at least partly in reliance on the balance sheet thus prepared.

If plaintiffs had testified in this action, they would have said that they first learned in November 1971 that Eleanor Rao had intentionally provided them with a tally which did not accurately reflect the amount of the company's accounts receivable. They also would have testified that soon thereafter they were advised by Frank and John Rao that the misstatement was a family matter that would be resolved directly with Eleanor Rao.

Nevertheless, on May 30, 1973, plaintiffs were served with process in a suit brought by Francis J. Rao, executor of the estate of Frank Rao, charging them with professional negligence for misstating the amount of the accounts receivable in preparing the June 30, 1968 balance sheet. The plaintiffs promptly notified each defendant of the suit, but each disclaimed any responsibility either to defend the suit or to pay any adverse judgment. One of the defendants, The Home Indemnity Company (Home), however, undertook defense of the suit under a reservation of rights.

By way of summary, there are three insurers and as many different professional liability insurance policies involved in this action. Home was the carrier in 1968 when the alleged malpractice occurred; St. Paul Fire and Marine Insurance Company (St. Paul) in 1971 when the alleged negligent act or omission was brought to plaintiffs' attention; and American Home Assurance Company (American) in 1973

when the suit commenced by the Rao estate was reported to the defendants. Obviously, each of the policies must be considered separately and we do so in chronological order.

## THE HOME POLICY

Coverage in this policy is defined in the following manner:

> "*This policy applies only to claims arising out of services performed prior to the termination of the policy and which are reported to the company during the currency of the policy, or, if similar insurance is not continued with the company, claims reported within one year after termination or expiration of the policy.* If, prior to such termination or expiration, the insured shall become aware of any occurrence which subsequently may give rise to a claim under the policy and shall give written notice to the company of such an occurrence, then any such claim which subsequently may be asserted against the insured shall, for the purpose of this policy, be deemed to have been made during the currency thereof.
>
> "*In the event similar insurance is not continued with the company, the insured, or successors to the insured's practice, may procure an extension of such one year period for an additional one or more years, but not to exceed five additional years*, by the payment of an additional premium which shall be 10% of the last annual premium for the first year's extension and 5% of the last annual premium for each subsequent year's extension." (Emphasis added.)

The plaintiffs contend, as we understand them, that it is unclear whether the language "prior to the termination of the policy" refers only to negligent or omitted acts taking place during the currency of the policy or whether it extends also to acts occurring prior thereto. Upon this premise, and without committing themselves to either interpretation of the questioned language, plaintiffs then argue that the mere

existence of the ambiguity makes impossible classification of the policy as either a "discovery" or an "occurrence" policy.[1] They contend, therefore, that the policy is a "hybrid," affording coverage so limited, so narrow in scope, so manifestly unfair and oppressive, and so inhibitory of their freedom of contract that it contravenes public policy, thereby precluding Home from relying on another policy provision that explicitly limits coverage to claims reported during the policy period or within 1 year thereafter.

That argument is no sounder than its premise and, because we reject that premise, we need not discuss the subsequent steps in the progression leading from premise to conclusion. In our judgment, the language "prior to the termination of the policy," if read in context and not as mere surplusage, clearly and unambiguously evidences an intent to cover events whenever occurring, provided they are reported to Home within the life of the policy. The language is not reasonably susceptible of another meaning and must therefore be read as written, *Factory Mutual Liability Insurance Co. of America* v. *Cooper*, 106 R.I. 632, 635, 262 A.2d 370, 372 (1970). The plaintiffs cannot rely on a nonexistent ambiguity in an attempt to make Home assume a liability not imposed by its policy. *McGowan* v. *Connecticut General Life Insurance Co.*, 110 R.I. 17, 19, 289 A.2d 428, 429 (1972).

So construed, the policy provided broad "discovery" type coverage and would protect plaintiffs from the claim of the Rao estate if that claim had been reported to Home during the policy term or within 1 year thereafter. However, the claim was not reported until more than 4 years after the

---

[1]Policies of insurance against liability arising from professional malpractice are generally classified either as "discovery" or "occurrence" policies. The difference between the two is that "[a] 'discovery policy' is one wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term, whereas an 'occurrence policy' is a policy in which the coverage is effective if the negligent act or omitted act occurs within the policy period, regardless of the date of discovery." 7A Appleman, *Insurance Law and Practice* §4504.3 at 104-05 (Cum. Supp. 1974).

policy had expired. That delay would not have been fatal had plaintiffs exercised their option to extend the reporting period for up to 5 years after expiration. But they did not, and consequently Home was obligated neither to defend the pending negligence action nor to pay any judgment obtained against plaintiffs therein.

## THE ST. PAUL POLICY

This policy provides broader coverage than is found in the Home and the American policies, and applies

> "to all damages resulting from professional services rendered or which should have been rendered:
> (a) during the policy period;
> (b) prior to the effective date of the Policy and then only if claim is made or suit is brought during the policy period, provided:
>> (i) no Insured had any knowlege of any circumstances which may have resulted in a claim at the effective date of the Policy;
>> (ii) there is no other insurance applicable."

The plaintiffs acknowledge that subparagraph (a) affords "occurrence" type coverage for negligent acts or omissions occurring during the policy period, whenever reported, and that subparagraph (b) provides "discovery" type protection for such acts or omissions, whenever occurring, provided claim is made or suit is brought during the policy period. Notwithstanding that broad protection, plaintiffs, citing *Jones* v. *Continental Casualty Co.*, 123 N.J. Super. 353, 303 A.2d 91 (1973), argue that, because the policy excludes and limits coverage, it is contrary to public policy and therefore void.

The *Jones* decision, however, is clearly distinguishable. In that case the policy covered errors and omissions occurring prior to its inception only if the plaintiffs "were also insured by this Company under a prior policy." That provision, the court held, predicated continuity of coverage on an insured's retaining a particular carrier and therefore

violated a public policy favoring freedom of choice in the selection of carriers. But the St. Paul policy contains no comparable provisions and plaintiffs point to no provision in that policy either tying them to St. Paul after the expiration of the policy or unduly restricting their ability to obtain adequate protection elsewhere.

Moreover, courts in other jurisdictions hold that public policy is not offended by "discovery" or "occurrence" provisions similar to or even more restrictive than those in the St. Paul policy. *Samuel N. Zarpas, Inc.* v. *Morrow*, 215 F. Supp. 887 (D.N.J. 1963); *San Pedro Properties, Inc.* v. *Sayre & Toso, Inc.*, 203 Cal. App. 2d 750, 21 Cal. Rptr. 844 (1962); *Livingston Parish School Board* v. *Fireman's Fund American Insurance Co.*, 282 So. 2d 478 (La. 1973); *Lehr* v. *Professional Underwriters*, 296 Mich. 693, 296 N.W. 843 (1941); *Rotwein* v. *General Accident Group*, 103 N.J. Super. 406, 247 A.2d 370 (1968); *Reid* v. *Dayton Title Co.*, 31 Ohio Misc. 275, 278 N.E.2d 384 (1972). We can perceive no reason for questioning either the rationales or the results of these cases. We conclude, therefore, that the St. Paul provision making the insurance contract applicable to events preceding its date only if claim is made or suit is brought during its currency, does not violate public policy. Neither does it provide plaintiffs with coverage for the 1968 occurrence, antedating the contract but reported to St. Paul after the contract had expired.

## THE AMERICAN POLICY

In May of 1973 when the Rao estate commenced its action, plaintiffs were insured under a 1-year policy issued by American. A specific endorsement to that policy limits coverage to claims:

> "arising out of professional services performed during the policy period stated in Item 2 of the Declarations and which are reported to the Company during the policy period."

That endorsement, read literally, clearly excludes coverage for a claim which, although reported during the

policy period, arose from an allegedly negligent act occurring about 5 years before the policy took effect.

The plaintiffs contend, however, that the endorsement requires both occurrence and discovery of the act or omission during the policy period; that it partakes of limitations common to both "discovery" and "occurrence" policies without providing at least as much protection as is customarily afforded by either type of policy; and that therefore the endorsement is vague and offensive to public policy. Consequently, they urge that American not be permitted to deny coverage.

The plaintiffs rely chiefly on *J.G. Link & Co.* v. *Continental Casualty Co.*, 470 F.2d 1133 (9th Cir. 1972), but that reliance is misplaced. In the *Link* case, the policy did not specify whether the negligent or omitted act must occur during the policy period or whether it could also occur prior to the policy's effective date. Thus, whether the policy was of the "discovery" or "occurrence" type was truly in doubt and, as the court noted, even the insurer shared that doubt. *Id.* at 1137. Having found that under either construction the policy afforded coverage,[2] the court concluded that it was unneccessary to decide whether the policy was an "occurrence" or "discovery" policy. Any language in the case suggesting that a policy cannot contain both "discovery" and "occurrence" requirements must be deemed inadvertent or, at best, dicta.

---

[2]In commenting on that doubt, the court said that if the policy were construed as an "occurrence" policy, the provision requiring commencement of the suit during the life of the policy would violate the public policy of a Montana statute (R.C.M. §13-806) providing:

> "*Restraints upon legal proceedings.* Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract, by the usual proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void."

On the other hand, the court continued, if the policy were construed as a "discovery" type, application of the settled principle of insurance law that ambiguities be construed against the insurer would render discovery of the negligent act or omission timely.

Although the circumstances in *Link* were, as the court said, "unique," *id.* at 1139, those in this case are not. Here, the plaintiffs knowingly purchased a policy that excludes coverage for prior acts. That exclusion does not seem unreasonable, and we are unaware of any principle that either prevents an insurer from imposing reasonable conditions upon the obligations it assumes in its contract, *see San Pedro Properties, Inc.* v. *Sayre & Toso, Inc.*, 203 Cal. App. 2d 750, 21 Cal. Rptr. 844 (1962); *Lehr* v. *Professional Underwriters*, 296 Mich. 693, 296 N.W. 843 (1941), or condemns on public policy grounds coverage that combines elements of both "discovery" and "occurrence" policies, but provides less protection than is customarily afforded by either, *see Rotwein* v. *General Accident Group*, 103 N.J. Super. 406, 419-20, 247 A.2d 370, 377-78 (1968). Accordingly, we conclude that the American policy affords no coverage.

Contentions urged by the plaintiffs, but not specifically referred to herein, are answered implicitly in our responses to other contentions or are so lacking in merit as not to require separate consideration.

The plaintiffs' appeal is denied and dismissed, the judgments appealed from are sustained, and the case is remanded to the Superior Court.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*Abedon, Stanzler, Biener, Skolnik & Lipsey, Howard I. Lipsey, Richard A. Boren,* for plaintiffs.

*Higgins, Cavanagh & Cooney, Kenneth P. Borden, James M. Micali,* (for Home Indemnity Company), *Hinckley, Allen, Salisbury & Parson, Michael P. DeFanti,* (for American Home Assurance Co.), *Hanson, Curran, Bowen & Parks, William A. Curran, Michael T.F. Wallor* (for St. Paul Fire & Marine Insurance Company), for defendants.