**FILED**

**Jan. 24, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

A. J. HALL, INC.,                     )
                                      )
        Plaintiff/Appellant,      )
                                      )   Wilson Chancery
                                      )   No.  8981
VS.                                   )
                                      )   Appeal No.
                                      )   01-A-01-9508-CH-00369
FEDERATED MUTUAL INSURANCE            )
COMPANY,                              )
                                      )
        Defendant/Appellee.       )


IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT OF WILSON COUNTY
AT LEBANON, TENNESSEE


HONORABLE C. K. SMITH, CHANCELLOR


John Thomas Feeney
Gina L. Zylstra
LEITNER, WARNER, MOFFITT, WILLIAMS
 DOOLEY, CARPENTER & NAPOLITAN
Suite 2300 First American Center
315 Deaderick Street
Nashville, Tennessee  37238
ATTORNEYS FOR PLAINTIFF/APPELLANT


Laura J. Hanson
Robert L. Graff
MEAGHER & GEER
4200 Multifoods Tower
33 South Sixth Street
Minneapolis, Minnesota  55402

Pamela King
NEAL & HARWELL
2000 Dominion Tower
150 Fourth Avenue, North
Nashville, Tennessee  37219-2498
ATTORNEYS FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

                      HENRY F. TODD
                      PRESIDING JUDGE, MIDDLE SECTION
CONCUR:
SAMUEL L. LEWIS, JUDGE
BEN H. CANTRELL, JUDGE

A. J. HALL, INC.,                          )
                                           )
     Plaintiff/Appellant,                )
                                           )     Wilson Chancery
                                           )     No.  8981
VS.                                        )
                                           )     Appeal No.
                                           )     01-A-01-9508-CH-00369
FEDERATED MUTUAL INSURANCE   )
COMPANY,                                   )
                                           )
     Defendant/Appellee.                )


O P I N I O N


The plaintiff, A. J. Hall, Inc., has appealed from the summary dismissal of a part of its suit against the defendant, Federated Mutual Insurance Company.  The Trial Court expressly directed the entry of final partial judgment as permitted by T.R.C.P. Rule 54.02.


Plaintiff is a distributor of petroleum products and owner of a service station where its products are stored and sold at retail.


Defendant issued to plaintiff a policy of insurance upon the service station for the period April 22, 1987, through April 22, 1988.  The policy included certain pollution coverage which will be detailed later.


On September 15, 1987, plaintiff was notified by Tennessee Department of Health and Environment of a possible leak in the facilities of the service station, and of the statutory obligation of plaintiff to investigate the matter and take appropriate action.


The notice was conveyed to defendant which determined that a "pollution incident" had occurred during the term of the policy and that defendant would perform its obligation under "Insuring Agreement 2" of the policy which provided:

> 2.  Insuring Agreement - Reimbursement of Mandated Off-Site
> "Clean-Up" Costs:"

a.      We will pay for "clean-up costs" that the insured becomes legally obligated to pay because of "environmental damage" to which this insurance applies. The amount we will pay for such "clean-up costs" is limited as described in Section III - Limits of Insurance.

b.      This insurance applies only to "environmental damage" caused by a "pollution incident" that commences on or after the Retroactive Date shown in the Declarations. The "pollution incident" must be from an "insured site" or "waste facility" in the "coverage territory."

The insured's obligation to pay "clean-up costs" because of the"environmental damage" must be asserted under statutory authority of the government of the United States of America, Canada or any political subdivision of the United States or Canada. Notice asserting such obligation must be first received by you during the policy period.

We have the right but not the duty to investigate, settle, contest or appeal, at our expense, any obligation asserted against an insured to pay "clean-up costs."

. . . .

3. "Clean-up costs" means expenses for the removal or neutralization of contaminants, irritants or pollutants.

. . . .

12. "Suit" means civil proceeding in which damages because of "bodily injury" or "property damage" to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

Upon receipt of said notice, defendant engaged Delta Environmental Consultants, Inc., (hereafter "Delta") to investigate the allegation of pollution. Delta reported that a leakage had occurred in plaintiff's facilities and proposed a plan to "alleviate the contamination" which was accepted and authorized by defendant. Defendant notified plaintiff that it had "assumed the handling of the pollution clean-up at the site."

The "clean-up" proceeded by Delta at the expense of defendant until March 6, 1992, when defendant notified plaintiff that it would no longer furnish the "clean up," but would assume the expense of continuation under the direction of plaintiff. Defendant explained this change by a fear that, under environmental law, defendant might incur liability in excess of its contractual policy obligations by assuming control of the polluted premises.

On March 3, 1993, plaintiffs filed their first complaint in the present suit in which the foregoing facts were stated and the following relief was demanded:

2. That Federated be required to complete the contamination remediation at the site of Gregory's Exxon and that the total cost of remediation, inclusive of any local, state or federal penalties which have been incurred or will be incurred, be borne entirely by Federated, and that this Court issue a mandatory injunction requiring Federated to undertake all necessary steps to complete the remediation without further delay;

3. In the alternative, that this Court enter a judgment in favor of Hall for Hall's total damages sustained as a result of the tortious and unlawful conduct of Federated in an amount established at trial;

4. That this Court find the award of punitive damages appropriate as the result of Federated's bad faith refusal to complete the remediation, in an amount to be determined at trial.

Defendant answered, admitting issuance of a "commercial package policy of insurance which was effective from April 22, 1987, to April 22, 1988, and which contained a separate pollution liability coverage part," furnishing coverage of $1,000,000 with a $10,000 deductible. The answer also admitted liability for expense of "clean up" within the policy limits, but denied an obligation to actually perform the "clean up."

On August 5, 1994, plaintiff filed its "First Amended Complaint" asserting that owners of an adjoining tract had filed suit against plaintiffs for property damage resulting from the leak on plaintiff's premises, that defendant was obligated to defend said suit and had failed and refused to do so.

-4-

Defendant responded that plaintiff's "Commercial Package Policy" in effect from April 22, 1987, to April 22, 1988, did not obligate defendant to defend the suit of the adjoining property owners.

On September 10, 1994, the Trial Court entered an eight page opinion and order concluding as follows:

> For the reasons set forth above, Federated's motion for summary judgment that it has no obligation under the policy at issue to provide "claim handling services" to the insured or, provide coverage in excess of its policy limits is hereby granted.
>
> Judgment shall, therefore, be entered in favor of defendant, Federal Mutual Insurance Company and against plaintiff, A. J. Hall, Inc. with respect to the entirety of plaintiff's original complaint. This order does not dismiss any of the allegations and demands of the first amended complaint filed 8/5/94.
>
> There being no just reason for delay, let judgment be entered accordingly.

On February 1, 1995, defendant moved to dismiss the first amended complaint for failure to state a claim for which relief can be granted. Affidavits were filed in support of said motion which renders it a motion for summary judgment.

On April 6, 1995, plaintiff filed a "Motion to Amend or Make Additional Findings of Fact and to Alter and Amend the Judgment."

On April 1, 1995, the Trial Court entered an order containing the following:

> The above-entitled matter came on hearing before the Honorable C. K. Smith on March 6, 1995 upon defendant Federated Mutual Insurance Company's ("Federated") summary judgment motion to dismiss plaintiff's A. J. Hall, Inc.'s ("A. J. Hall," "insured" or "plaintiff") first amended complaint pursuant to Rule 56.03 of the Tennessee Rules of Civil Procedure. . . .
>
> . . . .
>
> For the reasons set forth above, Federated's motion for summary judgment that it has no obligation under the policy to

provide a defense or indemnity to A. J. Hall with respect to the *Bell* suit is hereby granted.

Judgment shall, therefore, be entered in favor of defendant Federated Mutual Insurance Company and against plaintiff A. J. Hall, Inc. with respect to the amended complaint. Plaintiff's complaint is thus dismissed in its entirety and the Court declares that Federated Mutual Insurance Company has no obligation to provide insurance coverage to A. J. Hall for the *Bell* suit.

On May 23, 1995, defendant filed a response to plaintiff's April 6, 1995, motion.

On June 20, 1995, the Trial Court overruled plaintiff's April 6, 1995, motion.

On July 11, 1995, plaintiff filed notice of appeal from the June 20, 1995, order.

Plaintiff's "Statement of the Issues" is worded as follows:

A. The pollution liability policy issued by Federated to Hall required Federated to defend and indemnify Hall as a result of the *Bell* litigation.

B. Federated's pollution liability policy does not contain a definition of the term "claim" thereby rendering the language of the policy ambiguous.

C. Federated has failed to recognize the coverage for a "suit" under its policy of insurance.

D. A genuine issue of material fact existed as to whether or not Hall made a claim under its policy of insurance with Federated.

The insurance policy issued to plaintiff contained three separate insuring agreements. The original complaint, which is not involved in this appeal, was based upon Insuring Agreement 2, quoted above, which relates to cost of "clean up" of the polluted area.

The agreement to defend suits by third parties was Agreement 1, which read in pertinent part as follows:

1. Insuring Agreement - Bodily Injury and Property Damage.

a.	We will pay those sums that the insured becomes legally obligated to pay as compensatory damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  But:

(1)  The amount we will pay for damages is limited as described in Section III-Limits of Insurance:

(2)  We may investigate and settle any claim or "suit" at our discretion; and

(3)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments, settlements or "clean-up costs."

b.	This insurance applies only to "bodily injury" and "property damage" caused by a "pollution incident" that commences on or after the Retroactive Date [April 22, 1986] shown in the Declarations.  The "pollution incident" must be from an "insured site" or "waste facility" in the "coverage territory."

The insured's responsibility to pay damages because of the "bodily injury" or "property damage" must be determined in a "suit" on the merits in the "coverage territory" or in a settlement we agree to.

c.	<u>This insurance applies to "bodily injury" and "property damage" only if a claim for damages because of the "bodily injury" or "property damages" is first made in writing against any insured during the policy period.</u>  [Emphasis supplied.]

(1)  A claim by a person or organization seeking damages will be deemed to have been made when written notice of such claim is received by any insured or by us, whichever comes first.

(2)  All claims for damages because of "bodily injury" to the same person, including damages, claimed by any person or organization for care, loss of service or death resulting at any time from the "bodily injury" will be deemed to have been made at the time the first of those claims is made against any insured.

(3)  All claims for damages because of "property damage" causing loss to the same person or

> organization as a result of a "pollution incident"
> will be deemed to have been made at the time
> the first of those claims is made against any
> insured.
>
> . . . .

The policy also contains the following provision:

> Notice of a "pollution incident" is not notice of a claim.

Defendant concedes that it received timely notice of a "pollution incident" and that it is liable for the expense of the "clean up" of the pollution within the monetary limits of the policy. As stated, this aspect of the controversy is not a part of this appeal.

Defendant denies that it is obligated to defend or pay the claim of the adjoining property owners, which appears to be for incidental damages other than the cost of "clean up." Defendant's ground for denying liability is that the claim of the adjoining property owners was not:

> made in writing during the policy period as required by
> paragraph (a) of Insuring Agreement 2 of the policy, quoted
> above.

It is undisputed that no claim was made by the adjoining property owners to any one in any form during the policy period, April 22, 1987, to April 22, 1988.

Nevertheless, plaintiff insists that notice of a pollution incident was notice of a possible claim. Plaintiff argues that, since the policy contains no definition of the word, "claim," the policy is ambiguous, and thereby admits the interpretation that a report of need for clean up of pollution is notice to the insurer that adjoining landowners are making a claim for incidental damages in addition to the cost of clean up.

There is no ambiguity in the word, "claim," when examined in the light of the whole instrument and the circumstances of the case. *Blue Diamond Coal Co. v. Holland American Insurance Co.,* Tenn. 1984, 671 S.W.2d 829.

-8-

A "claim made" is not the fact that wrong-doing has occurred, but an assertion that some discrete amount of money is due. *MGIC Indemnity Corp. v. Home State Savings Association,* 6th Cir. 1986, 797 F.2d 285.

Under a "claims made" policy limitation, an untimely claim will not be recognized even though the cause of the claim occurred during the policy period. *Hoyt v. St. Paul Fire & Marine Ins. Co.,* 9th Cir. 1979, 607 F.2d 864; *Atlas Underwriters Ltd. v. Meredith-Burda, Inc.,* Va. 1986, 343 S.E.2d 65; *Lamberton v. Travellers Indemnity Co.,* Del. Super. 1974, 247 A.2d 104.

In view of the express provision of the policy, quoted above, this Court cannot agree that notice or knowledge of a "pollution incident" is notice that adjoining landowners have presented a written demand for incidental damages.

Plaintiff argues that the pollution of the adjoining land was discovered by Delta, the firm hired by defendant to investigate the nature and extent of the pollution. Such discovery occurred after the expiration of the policy. Even if the discovery occurred during the term of the policy, it would not serve as written notice that the landowners were making a demand for incidental damages.

The policy includes two separate and distinct obligations:

1. Within the policy limits, the insurer is obligated to pay the expense of clean-up from any "pollution incident" which occurs during the policy period as ordered by a governmental authority.

2. Within the policy limits, the insurer is obligated to defend against and satisfy <u>only those claims of third parties which are presented in writing to the insurer or insured during the policy period</u>.

The obligation of the first insuring agreement (to defend and satisfy claims) is strictly limited to claims presented during the policy period. It does not cover claims presented after the policy period, even though the basis of the claims occurred during the policy period. If plaintiff desired full protection against claims of others, presented after expiration of the policy, it was necessary for it to demand and pay for full coverage or to obtain other insurance to protect against claims made after the expiration of the policy.

Plaintiff cites *Walker v. Larson,* Mon. 1986, 727 P.2d 1321. That case involved legal malpractice insurance which included a "claims made" provision not quoted in the opinion of the Court which held that the actions of the claimant were sufficient to show a "claim made" during the policy period. In the present case, it is undisputed that the adjoining property owners asserted no claim in any form to any one until after the expiration of the policy term.

Plaintiff also cites *J. G. Link & Company v. Continental Casualty Company,* U.S.C.A. 9th Cir., 470 F.2d 1133 (1972) which involved an "errors and omissions policy" of an architect, which was ambiguous as to whether it was a "discovery policy" or an "occurrence policy" and which was construed most favorably to the policyholder. In the present case, no such ambiguity exists.

Plaintiff also argues that a genuine issue exists as to whether plaintiffs gave timely notice to defendant of the fact that the adjoining landowners were making a claim of incidental damages. As theretofore stated, it is undisputed that no claim or demand was made to plaintiff or defendant by the adjoining landowners within the policy period. This undisputed fact is fatal to any claim for relief under Section 1 of the policy which is the subject of this appeal.

No published Tennessee authority is found on the subject of "claims made" provisions in liability insurance policies. However, a majority of decisions from other jurisdictions have

recognized and enforced such provisions. *See Kenefick v. Hitchcock,* Wis. App. 1994, 522

N.W.2d 261; *Graman v. Continental Casualty Co.,* 87 Ill. App. 3rd 896; 409 N.E.2d 387

(1980); *Livingston Parrish School Board v. Firemen's Fund Am. Ins. Co.,* La. 1973, 282 S.2d

478; *Gereboff v. Home Indemnity Co.,* 119 R.I. 814, 383 A.2d 1024 (1978); *Rotwein v.*

*General Acc. Group,* 103 N.J. Super. 406, 247 A.2d 370 (1968).


The judgment of the Trial Court is affirmed. Costs of this appeal are assessed against

plaintiff. The cause is remanded to the Trial Court for any necessary further proceedings.


Affirmed and Remanded.


_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE