[No. C000767. Third Dist. Nov. 29, 1988.]

FARM AIR FLYING SERVICE, Plaintiff and Appellant, v. SOUTHEASTERN AVIATION INSURANCE SERVICES, INC., Defendant and Respondent.

COUNSEL

Denise J. Fischer and Weintraub, Genshlea, Hardy, Erich & Brown for Plaintiff and Appellant.

Leslie J. Mackoff and Kern & Wooley for Defendant and Respondent.

OPINION

PUGLIA, P. J.—Plaintiff Farm Air Flying Service appeals from a judgment in favor of defendant Southeastern Aviation Insurance Services, Inc. (Southeastern). Plaintiff sought a judicial declaration that a policy of

aviation insurance issued by Southeastern provided coverage for a crop dusting loss. The loss occurred when plaintiff's pilot sprayed the herbicide MCPA on a wild rice crop owned by Donald Sills. Plaintiff had been hired to treat Sills's cultured rice crop which was located in a field adjacent to the wild rice crop. The application of herbicide to the wrong crop resulted in damage of approximately $34,000.

Plaintiff reimbursed Sills for the damage and sought indemnification from Southeastern. Southeastern denied the claim, citing exclusion No. 4 in the policy which precludes coverage for "injury to . . . crops . . . to which the aerial application is deliberately made whether in error or not."

Prior to trial, Southeastern moved successfully for a summary adjudication to the effect that exclusion No. 4 is clear and unambiguous. At the conclusion of trial, the court ruled the policy as a whole is unambiguous and that on the evidence presented, plaintiff has no reasonable expectation of coverage for the loss incurred. We agree and shall affirm.

## I

Policy endorsement No. 1, entitled "Aerial Applicators Liability Endorsement," contains the following agreement, inter alia:

"B. *Coverage* B.—Property Damage Liability.

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft including aerial application (as herein defined)."

The aerial applicator's liability endorsement defines "aerial application" as: "[T]he spraying or dropping of chemical or seed whether or not such dropping of chemical or seed occurs as a direct result of collison of the aircraft with the ground or other object."

The aerial applicator's liability endorsement contains 17 exclusions limiting the applicability of coverage B. Among these is exclusion No. 4, pursuant to which coverage B does not apply in the following instances: "4. [T]o injury to or destruction of any crops, pastures, trees or tangible property to which the aerial application is deliberately made whether in error or not."

We reject plaintiff's claim that exclusion No. 4, read alone or in conjunction with the policy as a whole, is ambiguous. This provision was

meant to exclude—and by its unequivocal language does exclude—coverage for damage arising from the deliberate application of a chemical to any crops. The exclusion thus contemplates the possibility of pilot error such as occurred in this case, i.e., an application of herbicide which was no less deliberate merely because it was done in error. Plaintiff's pilot was directed to spray herbicide on the cultured rice crop. The pilot deliberately sprayed the herbicide on what he thought was the proper field. As it turned out, he erroneously sprayed the herbicide on the wrong field and thus the wrong crop. This is precisely the situation which exclusion No. 4 addresses.

Plaintiff claims the exclusion is ambiguous because the application of herbicide to the wild rice crop could not have been both deliberate and accidental at the same time. Plaintiff argues that what exclusion No. 4 really means is that a "direct" application of chemicals is not covered under the policy. In essence, plaintiff concedes that if exclusion No. 4 provided there was no coverage for damage resulting from a "direct" application of chemicals, whether that application was in error or not, there would be no coverage for the instant loss. Plaintiff claims, however, that because the policy uses the word "deliberate," plaintiff was not placed on notice that no coverage was afforded for the mistaken application of chemicals.

The word "deliberate" cannot be read in a vacuum, but must be construed in light of the entire exclusion. When so construed, the last five words of the exclusion—"whether in error or not"—explain what is meant by "deliberate," and place plaintiff on notice that any deliberate application of chemicals to any crops, even though in error, is not covered. The question is not whether Southeastern could have used other terms, but whether the terms used are clear and unambiguous. We hold that they are.

Plaintiff claims the exclusion is ambiguous as a result of industry usage. According to plaintiff, Southeastern has conceded that exclusion No. 4 is what is commonly referred to in the industry as a "crops worked upon" exclusion. Yet, plaintiff asserts its prior understanding of a "crops worked upon" provision differs from that of Southeastern.[1] Plaintiff claims Southeastern's failure to refer to or define anywhere in the policy such a commonly used term misled plaintiff as to the type of coverage it was actually purchasing.

---

[1] Horace Porter, president of plaintiff, testified his understanding of a "crops worked upon" provision was that such terms referred only to damage caused by application of the chemical to the crop hired to be treated. Where as here, the wrong crop was sprayed, Porter testified his understanding was that such a loss was not excluded by a "crops worked upon" provision.

Plaintiff's claim fails for two reasons. First, the instant policy does not use such terms common to the industry as "crops worked upon," "adjacent field coverage," etc. Rather, the policy sets forth on a separate page certain *acts* which are not covered including that described in exclusion No. 4. It is not incumbent upon Southeastern to define terms not used in the policy.

Moreover, if in fact plaintiff was mistaken as to the types of coverage set forth in the policy, the mistake was not the fault of Southeastern, as plaintiff never dealt directly with Southeastern. The policy was negotiated on plaintiff's behalf by George Moore, an insurance broker. Moore discussed with plaintiff's president, Horace Porter, the types of coverage plaintiff desired, and thereafter discussed with various insurers certain coverages sought by plaintiff, eventually settling upon the policy issued by Southeastern. Moore testified he was satisfied plaintiff received the types of coverage sought and Moore believed exclusion No. 4 precluded coverage for the instant loss.

If Porter misunderstood or was misled as to the coverages he purchased, the person responsible for that misunderstanding was Moore. (See Civ. Code, § 2332 [an agent's knowledge is imputed to his principal]; 3 Couch on Insurance 2d (rev. ed. 1984) § 25:27, pp. 315-316 [same].) Likewise, if there was confusion about the meaning of a "crops worked upon" provision or about the effect or meaning of exclusion No. 4, the person responsible for such confusion was Moore. We thus agree with the trial court when it concluded that "[i]f there was a misunderstanding as far as what coverage it was, [the misunderstanding] had to be . . . between the broker and [] plaintiff . . . ."

Having determined the policy was unambiguous, the trial court nonetheless proceeded to trial on the issue of plaintiff's reasonable expectation of coverage. In our view, a trial on this issue was unnecessary. ■ The doctrine of reasonable expectation of coverage is applicable only where there is an ambiguity in the language of the insurance contract. (*Morris* v. *Atlas Assurance Co.* (1984) 158 Cal.App.3d 8, 17 [204 Cal.Rptr. 95]; *State Farm Mutual Auto Ins. Co.* v. *Ball* (1981) 127 Cal.App.3d 568, 573 [179 Cal.Rptr. 644].) Where, on the other hand, the language of the contract is clear and unambiguous, the insured can reasonably expect only the coverage afforded by the plain language of the contract. (*Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 328 [183 Cal.Rptr. 695].)

The judgment is affirmed.

Evans, J., and Carr, J., concurred.