[No. A045974. First Dist., Div. Four. Nov. 26, 1990.]

MERRILL & SEELEY, INC., et al., Plaintiffs and Appellants, v. ADMIRAL INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Lawrence R. Jarvis for Plaintiffs and Appellants.

Boornazian, Jensen & Garthe, David J. Garthe and Bruce Winkelman for Defendants and Respondents.

**OPINION**

**ANDERSON, P. J.**—Merrill & Seeley, Inc., a professional engineering corporation, and Michael J. Merrill, Marc W. Seeley and James R. Mullen, three professional members thereof (collectively appellants), were insureds under three professional liability policies issued by Admiral Insurance Company (Admiral) effective from July 18, 1983, through June 1, 1986. Appellants sued Admiral and others for declaratory relief, breach of contract and various tort causes of action after Admiral denied them coverage under the policies. Ultimately, the trial court dismissed the action after sustaining Admiral's demurrers to the first and second amended complaints without leave to amend; this appeal followed.

Appellants urge us to reverse on grounds that the coverage restrictions are against public policy because they do not comport with the reasonable expectations of the insured. They further argue the policy language and format is misleading and ambiguous. We conclude the pertinent policy language is not ambiguous and, hence, under California law there is no reason to look to the insured's reasonable expectations. Finally, the policy format adequately directs the insured to the key limiting provisions and, thus, is not misleading.

## Facts[1]

Appellants purchased their first policy in July 1983 covering the period from July 18, 1983, through July 18, 1984. The face sheet of the policy, entitled "Declarations," listed the type of coverage as follows: "COVERAGE: PROFESSIONAL LIABILITY (CLAIMS-MADE FORM) AS PER FORM ATTACHED" and identified the "RETROACTIVE DATE" as July 18, 1983. The body of the policy, attached to the declarations, contained the following clause under the heading *"Coverage"*: *"CLAIMS MADE CLAUSE* THIS POLICY APPLIES TO CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD ARISING FROM SERVICES RENDERED OR ALLEGED TO HAVE BEEN RENDERED . . . SUBSEQUENT TO THE RETROACTIVE DATE SET FORTH IN THE DECLARATIONS, BUT PRIOR TO THE TERMINATION OF THIS POLICY."

According to the complaint, appellants purchased a second policy from Admiral for the period July 19, 1984, through May 31, 1985, and a third covering June 1, 1985, through June 1, 1986.[2]

Shortly after purchasing the first policy, an action was filed against appellants and they in turn tendered their defense to Admiral. Pursuant to a letter dated August 29, 1983, Admiral refused to defend because all allegations of error or omission related to appellants' activity prior to the policy's July 18, 1983, retroactive date. This first matter went to trial and resulted in a judgment exceeding $66,000.

A second lawsuit was commenced against appellants during the period of the second policy. Again, Admiral refused to defend. During the third policy term appellants received notice of a third claim seeking damages in excess of $3 million against them and a related subrogation action. Admiral would not accept defense of the underlying action.

Appellants filed the present lawsuit on January 7, 1987, amending the complaint respectively in May and August 1988. The first cause of action for declaratory relief concerned the scope of coverage under the claims-made provisions, appellants maintaining that the restrictive paragraph was in conflict with the policy declarations and in conflict with the ordinary and

---

[1] This being an appeal from a dismissal following the sustaining of a demurrer without leave to amend, we treat the demurrer as admitting the truth of all material factual allegations in the complaint. (*Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 493 [220 Cal.Rptr. 818, 709 P.2d 837].)

[2] The pertinent language in the first and third policies is identical. Appellants attached these policies to the complaint and incorporated them by reference; however, the middle policy apparently was never located or attached.

customary meaning of the term "claims made" when used to describe a type of insurance policy. On demurrer, Admiral argued that the policy was clear and unambiguous and its terms must be given full credence. It further noted (and we agree) that the remaining causes of actions would fail if the court found against appellants on the declaratory relief cause. The court indeed found against appellants on all counts and dismissed the complaint.

## II. Discussion

■ Appellants' primary contention[3] is that the claims-made restriction is against public policy because, with such a clause, coverage will exist only where all of the following occur during the policy period: (1) the negligent act; (2) the claim therefor first made against the insured; and (3) insured reports that claim to the company. They contend the restriction is "inherently unfair" as applied to soils engineers because there will rarely be a coincidence of the act or omission, resulting client claim, and notification, all within the same one-year period. In other words, requiring them to thread their tender to the insurer through two such narrow needle eyes severely inhibits the likelihood of their reaping any benefit under the policy.

■ By way of background, we note that the two common types of insurance policies offered in the professional liability field are the "claims made" (or discovery) policy and the "occurrence" policy. A claims-made policy usually provides coverage for prior errors or omissions so long as the claim is made during the policy period. Occurrence policies generally cover the insured for claims arising out of an occurrence that took place during the policy period, even if the claim is made after the policy expires. (*Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835, 845, fn. 5 [140 Cal.Rptr. 493]; *Pacific Indemnity Co.* v. *Imperial Casualty & Indemnity Co.* (1986) 176 Cal.App.3d 622, 626, fn.1 [222 Cal.Rptr. 115].) Thus, the former policy generally provides retroactive coverage while the latter will cover prospective claims.

---

[3] Appellants also assert that Insurance Code Section 11580.01 (§ 11580.01) embraces the public policy that professionals are entitled to notice that the policy is a claims-made policy, and by logic that policy should extend to all professionals, not just doctors and lawyers, the section's particular target population.

Section 11580.01 requires that policies offering liability coverage to certain licensed professionals [not including engineers] which limit that coverage to claims first made against the insured during the policy period must contain a prominent and conspicuous legend highlighting this limitation.

Not only is section 11580.01 inapplicable to engineers, there is nothing in that section which legislates a particular type of notice for the exclusion of prior acts. The obvious purpose of the statute is to make sure that the listed professionals understand they are purchasing a claims-made policy, with its hallmark feature of requiring notice to the insurer of an adverse claim within the time frame of the policy period. The coverage problem here does not relate to the timing of receipt of the claim, but rather to the timing of the act resulting in an error or omission which results in a claim.

The policy language here combines the coverage limitations of both "claims-made" and "occurrence" policies. It was just this severe curtailment that spurred the New Jersey Supreme Court[4] to hold that an insurance provision in a purported claims-made policy violated public policy because it provided no retroactive coverage whatsoever for the first year: "We find that the contract of insurance sold by St. Paul to Guarriello does not conform to the objectively reasonable expectations of the insured and is violative of the public policy of this State . . . . Indeed, St. Paul's policy combines the worst features of 'occurrence' and 'claims made' policies and the best of neither. It provides neither the prospective coverage typical of an 'occurrence' policy, nor the 'retroactive' coverage typical of a 'claims made' policy." (*Sparks* v. *St. Paul Ins. Co.* (1985) 100 N.J. 325 [495 A.2d 406, 414].) The court in *Sparks* went on to explain that the realities of professional negligence suggest "it would be the rare instance in which an error occurred and was discovered with sufficient time to report it to the insurance company, all within a twelve-month period." (*Id.*, at p. 415.)

In the court's view, the nonexistence of retroactive coverage during the first year for prior acts afforded such minimal protection against professional liability claims as to be incompatible with the objectively reasonable expectations of the insured. (*Sparks* v. *St. Paul Ins. Co.*, *supra*, 495 A.2d at pp. 414, 415.)

Courts from other states have not been convinced that claims-made policies excluding prior acts are invalid. Finding the policy in question not ambiguous on its face simply because it could not be categorized as a pure claims-made or a pure occurrence policy, the Supreme Court of Michigan also disagreed that such a policy was contrary to public policy. (*Stine* v. *Continental Cas. Co.* (1984) 419 Mich. 89 [349 N.W.2d 127, 137-138].) It embraced the reasoning of the Rhode Island Supreme Court in a case likewise involving a similarly hybrid professional liability policy: " 'Here, the plaintiffs knowingly purchased a policy that excludes coverage for prior acts. That exclusion does not seem unreasonable, and we are unaware of any principle that either prevents an insurer from imposing reasonable conditions upon the obligations it assumes in its contract [citation], or condemns on public policy grounds coverage that combines elements of both "discovery" and "occurrence" policies, but provides less protection than is customarily afforded by either'." (*Id.*, at p. 138, quoting *Gereboff* v. *Home Indemnity Co.* (1978) 119 R.I. 814 [383 A.2d 1024, 1028].)

We cannot but agree with the court in *Sparks* that these hybrid policies incorporate the worst features of their co-parents and it would be a rarity to

---

[4] We have found no published California opinion which discusses the particular coverage problem presented here.

ever have meaningful coverage under such terms. Nevertheless, we can see that in some instances a professional firm would choose this type of policy over no insurance at all, for example, when it is just beginning business, and there are no prior acts lurking in the insured's past. Such a policy might also be reasonable where the professional changes from occurrence to claims-made protection or where the insured needs to show proof of insurance, is financially limited to funding a minimal level of coverage, and is confident there are no residual errors or omissions which will surface in the future.

The New Jersey Supreme Court concluded that absent proof of factual circumstances rendering such narrow coverage both reasonable and expected, a claims-made policy that afforded no retroactive coverage during the initial year of issuance does not comport with the reasonable expectations of its purchasers and violates public policy. (*Sparks* v. *St. Paul Ins. Co.*, *supra*, 495 A.2d at p. 415.) ■ But in California, "the doctrine of reasonable expectation of coverage comes into play only where there is an ambiguity in the policy." (*Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 328 [183 Cal.Rptr. 695]; accord, *Farm Air Flying Service* v. *Southeastern Aviation Ins. Services, Inc.* (1988) 206 Cal.App.3d 637, 641 [254 Cal.Rptr. 1]; *Morris* v. *Atlas Assurance Co.* (1984) 158 Cal.App.3d 8, 17 [204 Cal.Rptr. 95].) Where the policy language is clear and unambiguous, the insured reasonably can expect only the coverage afforded by the plain language of the contract. (*Farm Air Flying Service* v. *Southeastern Aviation Ins. Services, Inc.*, *supra*, 206 Cal.App.3d at p. 641.) This is because an insurance policy is a contract, and like all contracts courts will construe the policy according to its language; where terms are clear we will enforce the contract as agreed upon by the parties. (*Hackethal* v. *National Casualty Co.* (1987) 189 Cal.App.3d 1102, 1109 [234 Cal.Rptr. 853].) Thus, under California law, " 'an insurer has a right to limit the policy coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume [citations].' " (*Ibid.*)

■ However, exclusionary clauses are subjected to heightened scrutiny. They must be conspicuous, clear and plain; if they do not meet this test, such clauses will be strictly construed against the insurer. (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115-116 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089]; *Mogil* v. *California Physicians Corp.* (1990) 218 Cal.App.3d 1030, 1036 [267 Cal.Rptr. 487]; *Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 718-721 [193 Cal.Rptr. 632].) Courts have invalidated exclusions under the conspicuous requirement where (1) they are not included under the exclusion section and are

placed on an overcrowded page; (2) they are included in a "General Limitations" section but in a dense pack format; or (3) they are hidden in fine print in a policy section bearing no clear relationship to the insuring clause. (*Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 577 [218 Cal.Rptr. 407] and cases cited therein.)

■ The limiting language here is plain, clear, and not at all technical or confusing. However, citing *Ponder* v. *Blue Cross of Southern California, supra,* 145 Cal.App.3d 709, appellants complain that the the claims-made clause is not conspicuous, particularly since the limiting language is inconsistent with the "Declarations" first page which they contend advertises the policy as a claims made policy. Similarly, they contend the policy is "undeniably" misleading because the "Declarations" page does not notify the reader that contrary to typical claims-made policies, this one denies retroactive coverage for prior acts.

We do not think the policy format runs afoul of the conspicuous test. First, by referring to the claims-made form "as per form attached," the "Declarations" page directs the reader to the policy itself to find out about the terms of coverage. Second, the inclusion of the retroactive date on the coverage page further puts the insureds on notice that they should examine the coverage provision to determine exactly how that impacts coverage. The word "retroactive" connotes an extension of scope or effect to an earlier time. However, here the retroactive date is identical to the first day of the policy period, also identified on the "Declarations" page. This coincidence of dates tells the insured that there is nothing retroactive about this particular policy. Certainly the retroactive date would not apply to when a claim could be made, for how can you make a claim when you have not yet contracted with an insurer? By logic it must refer to prior acts, and hence, our conclusion that this key date adequately alerts the reader that there are important limits on coverage. To find these we must turn to the coverage section for details.

Although this policy passes the conspicuous test because the cover page directs the insured to the coverage provisions, we do believe the better practice would be to spell out this critical exclusion for prior acts on this page.

Because the plain terms of the policy preclude coverage of all claims submitted on all legal theories developed in the litigation, we need not respond to appellants' contentions concerning the applicable statute of limitations for the various causes of action.

The judgment is affirmed.

Poché, J., and Perley, J., concurred.