La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Este recurso nos permite profundizar las expresiones contenidas en Torres v. E.L.A., 130 D.P.R. 640 (1992), así como examinar si las pólizas de seguro por responsabilidad profesional médico-hospitalaria del tipo claims made con fecha de retroactividad limitada, violan la política pública del Estado. Resolvemos en la negativa.
El Contrato de Seguros constituye la ley entre las partes. En el caso de autos, los términos, las condiciones y las exclusiones de la póliza en cuestión fueron claros y específicos. Aunque una póliza claims made con fecha de retroactividad limitada es más restrictiva que su concep-ción más tradicional, el límite acordado en el contrato ante nuestra consideración no viola la política pública del Estado.
I
El Sindicato de Aseguradores para la Suscripción Con-junta de Responsabilidad Profesional Médico-Hospitalaria (en adelante SIMED) y Advanced Cardiology Center Corporation (en adelante Advanced o la asegurada) suscribie-ron una póliza de seguro de responsabilidad médico-hospi-talaria de tipo claims made. La Póliza Núm. HPL0000175 tiene fecha de efectividad de 15 de junio de 2005 a 15 de junio de 2006, con fecha de cubierta retroactiva comen-zando el 15 de junio de 2004.(1) Esta limita la cubierta a los *5 incidentes ocurridos en o después de la fecha de retroacti-vidad y que las reclamaciones sean hechas y notificadas dentro del periodo de vigencia.
En lo pertinente, la póliza expresa: (2)
The Syndicate will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to which this insurance applies caused by a medical incident, occurring on or after the retroactive date, for which claim is first made against the Insured and reported to the Syndicate during the policy period, and arising out of the rendering of or failure to render professional services. (Enfasis suplido.) Apéndice de la Petición de certio-rari, pág. 181.
Así las cosas, el 21 de enero de 2005 el Sr. Wilfredo Jiménez López y otros (en adelante la parte recurrida) ins-taron una demanda de daños y perjuicios por impericia médica contra Advanced y sus compañías aseguradoras. Posteriormente, el 22 de junio de 2005 presentaron una Demanda Enmendada para sustituir los nombres de las aseguradoras, incluyendo a SIMED.(3) Esto tras un inci- *6 dente ocurrido el 25 de enero de 2004 en el Centro Médico de Mayagüez. La peticionaria fue emplazada el 24 de agosto de 2005.(4)
El 22 de septiembre de 2005, la peticionaria presentó una moción de sentencia sumaria parcial para señalar que no existía cubierta para las reclamaciones. Luego de varios trámites judiciales, mediante Resolución de 20 de septiem-bre de 2006, el tribunal de instancia denegó el petitorio presentado por SIMED. El foro primario concluyó que el riesgo asegurado no tenía que ocurrir dentro del término de vigencia de la póliza. No obstante, posteriormente el Tribunal de Primera Instancia dejó sin efecto la resolución emitida, declarando “ha lugar” la moción de sentencia su-maria de SIMED y desestimando la reclamación contra el peticionario el 15 de diciembre de 2006.
El 21 de junio de 2007 el Tribunal de Apelaciones emitió la sentencia recurrida y restituyó la demanda contra SIMED. Esto al concluir que la notificación de la reclama-ción a la aseguradora en una póliza claims made en el tér-mino de vigencia constituye el riesgo asegurado indepen-dientemente de la fecha del siniestro, aun cuando éste ocurra previo al término contratado. Posteriormente, de-negó la moción de reconsideración presentada por SIMED.
Inconforme, el 20 de agosto de 2007 SIMED recurre ante nos(5) y señala los errores siguientes:
Erró el [Tribunal de Apelaciones] al revocar la sentencia par-cial del [Tribunal de Primera Instancia] y resolver que la pó-liza de seguros expedida a Advanced cubre el incidente médico objeto del pleito, a pesar de que el contrato de seguros expre-samente lo excluye de cubierta por estar fuera de la fecha de retroactividad de la póliza.
*7 Erró el [Tribunal de Apelaciones] al ignorar los términos del contrato de póliza de seguro y recurrir a fuentes externas a dicho contrato, decisiones judiciales o tratadistas, las cuales solamente describen en forma general la póliza tipo “claims made”, pero que no analizan el contrato que tuvo ante sí el [Tribunal de Primera Instancia], ni el [Tribunal de Apelaciones]; y que tiene ante sí este Honorable Tribunal en el presente recurso. Petición de certiorari, pág. 7.
El 9 de noviembre de 2007 expedimos el recurso solicitado. Ambas partes presentaron los alegatos corres-pondientes.
El peticionario alega que el incidente por el que se re-clama no está cubierto por la póliza, ya que ésta excluye claramente los eventos previos a la fecha de retroactividad contratada. Señala que el contrato estipula que se asegu-ran las reclamaciones por incidentes médicos ocurridos con posterioridad a la fecha de retroactividad y que le sean notificados a SIMED durante la vigencia de la póliza. Añade que este tipo de contrato ha sido validado por el Estado a través del Comisionado de Seguros por cumplir con el Código de Seguros y la Ley Núm. 4 de 30 de diciem-bre de 1986 (26 L.P.R.A. secs. 4101-4107).(6) Asimismo, ar-gumenta que concluir que eventos previos a la fecha de retroactividad están asegurados violenta el pacto de las partes y amplía el alcance de la cubierta y, por consi-guiente, la responsabilidad del asegurador sin la debida compensación para responder por el riesgo.
Por otra parte, la parte recurrida argumenta que lo crucial en una póliza de descubrimiento es que la reclamación se efectúe dentro del término contractual de la póliza. Apunta que la interpretación de la peticionaria respecto a la fecha límite de retroactividad impone requisitos adicio- *8 nales a este tipo de pólizas que contravienen la política pública y atentan contra los principios de prescripción del Código Civil. Por ende, alega que al haberse reclamado en el término de vigencia, la reclamación está cubierta por el seguro, pues su notificación al asegurador es el evento y riesgo asegurado, independientemente de la fecha del incidente.
Luego de ponderar los argumentos de ambas partes, procedemos a resolver.
I — i 1 — I
A. Contratos de seguros
En nuestra jurisdicción, la industria de seguros está revestida de un gran interés público debido a su importancia, complejidad y efecto en la economía y la sociedad. S.L.G. Francis-Acevedo v. SIMED, 176 D.P.R. 372 (2009); Echandi Otero v. Steward Title, 174 D.P.R. 355 (2008); Comisionado de Seguros v. PRIA, 168 D.P.R. 659 (2006); PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994). Por estas razones es reglamentado extensamente por el Estado mediante la Ley Núm. 77 de 19 de jimio de 1957, según enmendada, conocida como Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 101 et seq., y el Código Civil le sirve de fuente de derecho supletorio. Véanse: Mun. of San Juan v. Great Ame. Ins. Co., 117 D.P.R. 632, 635 (1986); Banco de la Vivienda v. Pagán Ins. Underwriters, 111 D.P.R. 1, 6 (1981); Serrano Ramírez v. Clínica Perea, Inc., 108 D.P.R. 477, 482 (1979). Además, el Comisionado de Seguros de Puerto Rico es quien vela por el cumplimiento de las disposiciones del Código de Seguros de Puerto Rico. Este también fiscaliza y reglamenta la industria de seguros. 26 L.P.R.A. see. 201 et seq. Véase, además, R. Cruz, Derecho de Seguros, San Juan, Ed. J.T.S., 1999, pág. 1.
*9 El alto interés público es aún más palpable en cuanto a los seguros de responsabilidad médico-hospitalaria que posibilitan la solvencia de los profesionales e instituciones para el cuidado de la salud en beneficio de los pacientes afectados por actos de impericia profesional. Nuestro ordenamiento jurídico requiere que todo profesional de servicios de salud, o institución de cuidado de salud, presente anualmente prueba de su responsabilidad financiera por impericia profesional por las cantidades especificadas en el Código de Seguros. Este deber se puede satisfacer mediante: (i) el establecimiento de un fondo de garantía, (ii) la obtención de un seguro de responsabilidad profesional médico-hospitalaria expedido por un asegurador que participe del mercado de libre competencia o SIMED, o (iii) una combinación de ambas formas. Su incumplimiento conlleva la suspensión de la licencia o del certificado de autoridad expedido a su favor. 26 L.P.R.A. see. 4105. Sin embargo, “[e]n la mayor parte de los casos, dichos profesionales e instituciones dependen del seguro por responsabilidad profesional médico-hospitalaria para poder cumplir con este requisito del Estado”. Exposición de Motivos de la Ley Núm. 4 de 30 de diciembre de 1986 (1986 Leyes de Puerto Rico 730, 733). Repasemos, entonces, las normas generales del derecho de seguros.
El Art. 1.020 del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 102, define el contrato de seguros como aquel
... mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo.
Cónsono con lo anterior, el contrato de seguro por responsabilidad profesional médico-hospitalaria constituye “la cubierta de seguros de responsabilidad profesional para cubrir riesgos de daño por culpa o negligencia por imperi- *10 cia profesional (malpractice)(7) para profesionales de servi-cios de salud e instituciones de cuidado de salud”. 26 L.P.R.A. see. 4102(7). Véase, además, Díaz Ayala et al. v. E.L.A., 153 D.P.R. 675 (2001).
Aun cuando el contrato de seguro tiene sus particularidades y complejidades, como todo contrato, éste constituye la ley entre las partes. Art. 1230 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3451; Monteagudo Pérez v. E.L.A., 172 D.P.R. 12, 20 (2007). Asimismo, éste deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado esos términos por cualquier aditamento, endoso o solicitud que sean añadidos a la póliza para formar parte de ésta. 26 L.P.R.A. sec. 1125. A su vez, su lenguaje “debe ser interpretado —de ordinario— en su significado corriente y común, sin ceñirse demasiado al rigor gramatical, sino al uso general y popular de las voces”. Marín v. American Int’l Ins. Co. of P.R., 137 D.P.R. 356, 361 (1994). De igual forma, los contratos de seguros cuyos términos, condiciones y exclusiones sean claros y específicos, y no den margen a ambigüedades o a diferentes interpretaciones, se deben hacer valer en conformidad con la voluntad de las partes contratantes. López v. Atlantic Southern Ins. Co., 158 D.P.R. 562, 569 (2003); Díaz Ayala v. E.L.A., supra, pág. 691. Empero, puesto que el contrato de seguro es de adhesión, toda ambigüedad debe ser interpretada a favor del asegurado. Monteagudo Pérez v. E.L.A., supra; Marín v. American Int’l Ins. Co. Of P.R., supra.
Respecto a las cláusulas de exclusión, éstas tienen *11 la función de eliminar la responsabilidad que tiene un ase-gurador de indemnizar por pérdidas resultantes de los riesgos excluidos. Echandi Otero v. Steward Title, supra. Sobre éstas hemos resuelto que, puesto que limitan la cu-bierta, se han de interpretar restrictivamente a favor del asegurado. No obstante, si son claras y aplican a determi-nada situación, la aseguradora no está obligada a responder por esos riesgos. Id. Véase: Monteagudo Pérez v. E.L.A., supra. Véase, además, Cruz, op. cit, págs. 167-170.
B. Contratos de seguros de responsabilidad profesional médico-hospitalaria
En la industria de seguros hay dos (2) tipos básicos de pólizas de responsabilidad profesional.(8) Torres v. E.L.A., supra. Primeramente, existen las pólizas de ocurrencia que tradicionalmente “protege [n] al asegurado de responsabilidad por cualquier acto u omisión negligente incurrido durante el período de vigencia de la póliza, independientemente del momento en que se hace la reclamación”. (Escolio omitido.) Id., pág. 645.(9) Por otro lado, en su concepción más básica, las pólizas claims made se caracterizan por proveer cubierta al presentarse una reclamación contra el asegurado durante el periodo de vigencia de la póliza. (10) Centramos nuestro análisis en éstas últimas.
*12 Las pólizas tipo claims made llevan en el mercado de seguros desde la década de 1970. 20 Appleman on Insurance Law and Practice 2d Sec. 130.1, pág. 222 (2002). Se desarrollaron, inter alia, como respuesta de las aseguradoras a la dificultad de calcular con precisión riesgos y primas para cubrir reclamaciones futuras; a la dificultad de establecer la fecha de ocurrencia de los hechos o eventos que dan margen a la reclamación y, por consiguiente, poder precisar si había cubierta para ellos, así como “[a]l aumento en espiral del monto de los veredictos, la adopción y el desarrollo de nuevos conceptos en el campo de daños y perjuicios a través de legislación y de decisiones judiciales”.(11) Torres v. E.L.A., supra, págs. 647-648. Véase C.M. Frame, “Claims-Made” Liability Insurance: Closing the Gaps with Retroactive Coverage, 60 Temp. L.Q. 165, 178-184 (1987). Las pólizas claims made se utilizan particularmente para asegurar actividades con el potencial de que los daños no sean descubiertos hasta pasados muchos años, aumentando de esta forma el riesgo del asegurador.(12) I Stempel on Insurance Contracts 3d pág. 2-117 (Sup. 2010).
Las pólizas claims made han sido aceptadas en diversas jurisdicciones y se ha reconocido su utilidad social, incluso en nuestro ordenamiento jurídico. Frame, op. cit., pág. 172. Véanse: S.L.G. Francis-Acevedo v. SIMED, supra; Torres v. E.L.A., supra. Entre los beneficios para el *13 asegurado se encuentran la oportunidad de obtener primas más bajas, una cubierta para eventos que puedan haber tenido lugar durante un período anterior al comienzo de la póliza, así como una cubierta adecuada según los factores inflacionarios(13) Torres v. E.L.A., supra, págs. 648-649. Por otro lado, el asegurador se beneficia principalmente de limitar su responsabilidad a las reclamaciones notificadas durante el periodo de la póliza y al poder calcular los ries-gos y las primas con mayor precisión. Appleman, supra, Sec. 130.1, pág. 219.
En Torres v. E.L.A., supra, analizamos una cláusula similar a la del presente caso.(14) La controversia versaba sobre si el requisito de notificación de reclamaciones den-tro del periodo de vigencia de una póliza claims made a la aseguradora contravenía la política pública del Estado. Concluimos que ese requisito no era contrario a la política pública. En ese caso por primera vez diferenciamos una póliza claims made de una de ocurrencia.(15) Expresamos que ésta radica principalmente en el riesgo asegurado por una y otra. Al analizar la póliza claims made, señalamos que ésta protege al asegurado sólo contra reclamaciones hechas y notificadas a la aseguradora durante el periodo *14 de vigencia de la póliza. íd., pág. 645. Sostuvimos que “la notificación de la reclamación a la aseguradora constituye el evento y riesgo asegurados por la póliza de claims made, independientemente de la fecha del siniestro”. Id., pág. 646. Fue esta expresión sobre el aspecto temporal de la fecha del siniestro, la que traen a nuestra atención los re-curridos por ser tomada como fundamento para la determi-nación del Tribunal de Apelaciones. Por lo tanto, abunda-mos a continuación.
Mucho se ha comentado sobre los límites temporales de este tipo de pólizas. Algunas pólizas claims made, en su acepción más básica, solamente requieren que la reclama-ción sea efectuada durante el periodo de vigencia sin im-portar el momento del acto u omisión negligente.(16) Esa es la característica principal de este tipo de pólizas y la razón por la cual expresamos que éste es el riesgo asegurado. Sin embargo, cabe señalar que la póliza que consideramos en Torres v. E.L.A., supra, era aún más restrictiva que la pó-liza claims made tradicional, al exigir que la notificación de la reclamación fuera hecha dentro del mismo periodo.(17)
No obstante, además de restringir las pólizas en cuanto a que la reclamación sea hecha y notificada durante el pe-riodo de vigencia, las pólizas claims made usualmente pre-sentan otro límite a la cubierta: una fecha de retro-actividad.(18) Véanse: Appleman, supra, Vol. 23, Sec. 146.6(E), págs. 113-114; L.M. Villaronga, Seguros, 62 Rev. Jur. U.P.R. 935, 949 esc. 46 (1993). La fecha de retroactivi- *15 dad tiene como función reducir la exposición del asegura-dor al excluir de la cubierta aquellos incidentes ocurridos previo a la fecha señalada, a pesar de que la reclamación sea presentada dentro del periodo de vigencia de la póliza. Véanse: Appleman, supra, Vol. 20, Sec. 130.4(C), pág. 296; B.R. Ostrager y T.R. Newman, Handbook on Insurance Coverage Disputes, 13ra ed., Colorado, Ed. Aspen, 2003, Vol. 1, Sec. 4.02[b][4], pág. 129; Stempel, op. cit, pág. 2-117; R.H. Long, The Law of Liability Insurance, Nueva York, Ed. Matthew Bender, 2006, Vol. 3, pág. 12.87. La necesidad de restringir las cubiertas mediante un término de retro-actividad ha sido reconocida desde que se propuso original-mente este tipo de póliza.(19) Así, Sol Kroll expresó que:
It must be noted that there are given situations when the underwriter finds it imperative to attach a retroactive date to a “claims made” policy by reason of underwriting requirements, and in those cases, therefore, only those claims which occurred subsequent to such date would be covered by the “claims made” policies. S. Kroll, “Claims Made”-Industry’s Alternative: “Pay as You Go” Products Liability Insurance, 637 Ins. L.J. 63, 69 (1976).
Diversas jurisdicciones estatales han examinado las cu-biertas retroactivas limitadas en las pólizas claims made y las han aceptado en sus respectivos ordenamientos jurídi-cos a pesar de que éstas representan una restricción de cubierta seria.(20) Holmes, op. cit, págs. 241 y 298. Véanse: *16 Marshall v. Kansas Med. Mut. Ins. Co., 73 P.3d 120 (Kan. 2003); Anderson v. Ichinose, 760 So. 2d 302 (1999); Merrill & Seeley, Inc. v. Admiral Ins. Co., 225 Cal. App. 3d 624 (1990); Travelers Indemnity Co. V. Mutual Ins. Co., 731 P.2d 632 (Ariz.App.1986); Stine v. Continental Cas. Co., 349 N.W.2d 127 (1984); Gereboff v. Home Indemnity Co., 383 A.2d 1024 (1978). No obstante, la aceptación generali-zada de este tipo de límite a la cubierta se debe en gran parte a que conlleva correlativamente una prima reducida, así como, a que previene el fraude de seguros. Marshall v. Kansas Med. Mut. Ins. Co., supra, pág. 129; Truck Ins. Exch. V. Ashland Oil, Inc., 951 F.2d 787, 790-971 (7mo.Cir.1992).
En Torres v. E.L.A., supra, pág. 649, citamos con apro-bación el caso Stine v. Continental Cas. Co., supra, pág. 138. En ese caso se argumentó, inter alia, que la falta de cubierta por actos previos privaba al asegurado de los be-neficios de una póliza claims made y violaba la política pública. Al respecto, el Tribunal Supremo de Michigan de-terminó que la póliza era clara al especificar el término de la cubierta. Además, expresó que el que no se pueda clasi-ficar la póliza como una claims made en su sentido más tradicional, sino una híbrida, no la convertía en una póliza con cláusulas ambiguas.
Ciertamente, la concepción básica de este tipo de pólizas nos es de ayuda para analizar los seguros de responsabilidad profesional. No obstante, el contrato de seguro es la ley entre las partes y los contratantes —en un *17 ámbito permisible de su libertad de contratación— acorda-ron que no había cubierta fuera del periodo de la póliza. Aplica, entonces, a las pólizas claims made con fecha de retroactividad la norma que esbozáramos en Saavedra v. Joyería Gordons, Inc., 120 D.P.R. 360, 364 (1988); no existe responsabilidad si el incidente ocurre fuera del periodo de tiempo de cubierta de la póliza de responsabilidad. Por lo tanto, es al contrato y a los términos dispuestos en él, a los que damos efecto legal al ser claros, específicos y no dar margen a ambigüedades o diferentes interpretaciones.
No obstante, cabe señalar que al limitarse la retroacti-vidad de la póliza, en muchas ocasiones ocurren periodos de tiempo sin cubierta. Esto sucede a menudo cuando el individuo cambia de póliza o de asegurador. Long, op. cit., pág. 12.90. En tales casos, se aconseja renovar con la misma aseguradora o adquirir una cubierta adicional (co-nocida en inglés como nose coverage o prior acts coverage) mediante el pago de urna prima adicional, de ser provista por la industria de seguros. Stempel, op. cit., págs. 2.117-2.118; Villaronga, supra, págs. 948-949. Sin embargo, como expresáramos en Torres v. E.L.A., supra, la necesidad de continuidad de las pólizas claims made favorece la polí-tica pública del Estado.
En este caso podemos apreciar una póliza que le re-quiere a la entidad asegurada: (i) que el incidente médico ocurra en la vigencia de la póliza que incluye una fecha de retroactividad limitada; (ii) que la reclamación se presente durante ese periodo, así como (iii) que se notifique a la aseguradora dentro de la misma fecha. Según esta póliza claims made, los tres (3) elementos constituyen los térmi-nos que rigen contractualmente las obligaciones de las partes. Empero, aunque la reclamación fue notificada den-tro del periodo de vigencia de la póliza, el incidente ocurrió fuera del periodo en el que se extendía la cubierta retroac-tiva y la reclamación fue interpuesta previo al inicio de la *18 relación contractual.(21) Por lo tanto, no se perfeccionaron todos los elementos convenidos para que la aseguradora asumiera el riesgo.
No cabe duda de que la póliza suscrita limita considera-blemente el riesgo que asume SIMED. No obstante, la pó-liza en cuestión constituye la ley entre las partes y, luego de analizarla, concluimos que sus términos, condiciones y exclusiones, particularmente en cuanto a la cubierta retro-activa, no dan margen a diferentes interpretaciones, aun ante el examen de una persona de inteligencia promedio que se apreste a adquirirla. Estos son claros, específicos y no dejan duda sobre la verdadera intención de los contratantes.
Además de analizar la póliza a la luz de los criterios de interpretación de todo contrato de seguro, examinamos el argumento presentado por la parte recurrida de que la im-posición de una fecha límite de retroactividad a las pólizas claims made atenta contra la política pública que requiere a los profesionales e instituciones de salud que demuestren su responsabilidad financiera para el año fiscal en que ejercerán sus funciones y, por lo tanto, el asegurador no puede limitar su exposición mediante una fecha de retroactividad. Este argumento no nos persuade.
No cabe duda de que existe un interés público que re-quiere a los profesionales y a las instituciones para el cui-dado de la salud que puedan responder económicamente por actos de impericia profesional. Asimismo, es el público el que se ve más afectado por la falta de cubierta del pro-fesional o la institución, ya sea porque el mercado no ofrece el producto o porque el asegurado no optó por una cubierta más amplia. De igual forma, es el Estado el que debe velar *19 por un balance entre la responsabilidad y necesidad de que los profesionales y las instituciones para el cuidado de la salud tengan seguros asequibles para responder por los da-ños por culpa o negligencia por impericia profesional, así como por la estabilidad de la industria de seguros de la que dependen muchos de estos profesionales e instituciones para cumplir con el requisito impuesto por el Estado para practicar. (22)
Empero, ello no implica invalidar o hacer caso omiso de lo claramente contratado por la partes para extender la cubierta a eventos que ni el asegurador ni la aseguradora tuvieron la intención de asegurar, como tampoco descartar un formulario de pólizas aprobado por el Comisionado de Seguros de Puerto Rico.(23) Lo contrario extendería el riesgo asumido por la aseguradora en contravención a lo pactado por las partes y sin la debida compensación para ello.
Este Tribunal, al considerar la complejidad y los efectos de los seguros por responsabilidad médico-hospitalaria en la sociedad y la industria de seguros, considera que el interés público se sirve mejor mediante legislación o reglamentación que le asegure a estos profesionales e instituciones —mediante el pago de primas asequibles— pólizas con las menores interrupciones de cubierta u opciones para adquirir una cubierta adicional para los riesgos ex-cluidos, y no a través de jurisprudencia que amplié lo contratado por las partes. Aunque reconocemos los altos costos de los seguros de responsabilidad profesional, que de por sí soporta la clase médica de nuestro país, no podemos sino *20 concluir que nuestro ordenamiento, aunque reglamenta extensamente los contratos de seguros, da margen a la li-bertad de contratación entre las partes. Véase Art. 1207 del Código Civil, 31 L.P.R.A. see. 3372. Véase, además, Cruz, op. cit., pág. 38. Ante los hechos particulares de este caso, concluimos que la restricción de cubierta suscrita por la asegurada en cuanto a una fecha de retroactividad limi-tada respondió a la libertad de contratación de las partes y se encuentra en los confines tolerados por nuestro ordenamiento. Esta no atenta contra la política pública de Estado.
III
Otro argumento que presenta la parte recurrida, aun-que no abunda en éste, es que se afectarían los principios de prescripción del Código Civil si adoptáramos la inter-pretación propuesta por la peticionaria. Sin embargo, no hallamos en este caso fundamentos para concluir que los límites convenidos en cuanto a la exposición de la asegura-dora por incidentes ocurridos previo a la fecha de retroac-tividad de la póliza incidan sobre los principios de prescripción.
No está en controversia el que se haya presentado la demanda contra la asegurada en el periodo prescriptivo de la acción. No obstante, durante ese periodo no se había expedido la Póliza Núm. HP10000175 por SIMED que la responsabilizara por la reclamación presentada según sus términos. Por lo tanto, no podemos extender a la alegada víctima de impericia médica los beneficios de una cubierta a la que el propio asegurado no tiene derecho.
IV
Por los fundamentos expuestos, revocamos la sentencia emitida por el Tribunal de Apelaciones. Esto por entender *21 que, en el caso de autos, la póliza de seguro tipo “claims made”por responsabilidad profesional médico-hospitalaria con fecha de retroactividad limitada no viola la política pública del Estado. La póliza contiene unos términos, con-diciones y exclusiones claros y específicos que no están su-jetos a varias interpretaciones.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió sin opinión escrita. El Juez Asociado Señor Martínez Torres se inhibió.

 Apéndice de la Petición de certiorari, págs. 170-185. Surge de los autos que previo a la fecha contratada en la póliza con SIMED, Advanced contaba con una *5 póliza de responsabilidad médico-hospitalaria de tipo claims made. La Póliza Núm. 169-1335 fue expedida por la aseguradora American International Insurance Company y tenía una vigencia original desde el 6 de mayo de 2003 hasta el 16 de junio de 2004. American International Insurance Company fue incluida como demandada en el pleito de autos. El 22 de septiembre de 2005, la aseguradora solicitó que se dictara sentencia sumaria, puesto que la reclamación no fue notificada en el término de la póliza. Apéndice de la Petición de certiorari, págs. 241-245. El Tribunal de Primera Instancia declaró “con lugar” el petitorio. El tribunal apelativo intermedio confirmó tal determinación.

 Mediante una declaración jurada de la gerente del Departamento de Suscrip-ción de SIMED, la peticionaria presentó evidencia de que la póliza también excluye expresamente las reclamaciones por actos u omisiones que ocurrieron previo a la fecha de retroactividad. La Cláusula de Exclusión señala:
“This insurance does not apply:
“(6) to any claim or claims arising out of acts or omissions which occurred prior to the retroactive date or which occur subsequent to the termination date of this insurance ....’’Apéndice de la Petición de certiorari, pág. 169.

 Mediante la presentación de una demanda enmendada el 5 de junio de 2005, la parte recurrida sustituyó a las aseguradoras desconocidas. La tercera aseguradora demandada fue Triple S, Inc. El 13 de enero de 2006, la parte recurrida desistió con perjuicio en cuanto a ésta por no existir póliza alguna a favor de Advanced. Apéndice de la Petición de certiorari, págs. 145-146.

 El emplazamiento para SIMED fue expedido el 11 de julio de 2005 y diligen-ciado el 24 de agosto de 2005. Apéndice de la Petición de certiorari, págs. 237-239.

 El 11 de septiembre de 2007 la Asociación de Compañías de Seguro de Puerto Rico, Inc. solicitó su intervención como amicus curiae. Reiteró su solicitud el 27 de octubre de 2008 y el 30 de julio de 2009. Denegamos la intervención solicitada.

 SIMED añade que la parte recurrida renunció al planteamiento de que el requisito de cubierta en cuestión es contrario a la política pública del Estado y la intención de la Ley Núm. 4 de 30 de diciembre de 1986 (26 L.P.R.A. sees. 4101-4107). No obstante, analizado el expediente advertimos que la parte recurrida sí presentó ese planteamiento ante el foro primario y apelativo.

 A su vez, el Código de Seguros define el daño por culpa o negligencia por impericia médica (malpractice) como “cualquier daño ocasionado a un paciente por error, omisión, culpa o negligencia como consecuencia de, o inherentes a, servicios profesionales brindados o que debieron haber sido brindados por un profesional de servicios de salud o una institución de cuidado de la salud”. 26 L.P.R.A. sec. 4102(2).

 No obstante, hoy día gran parte de las pólizas de responsabilidad profesional por impericia médica son suscritas como tipo claims made. 20 Appleman, Insurance Law and Practice 2d Sec. 130.1, págs. 228, 231 y 236 (2002). Véase, además, R.E. Keeton, Insurance Law: a guide to fundamental principles, legal doctirnes, and commercial practices, St. Paul, Ed. West, 1988, pág. 598 (“In the 1970s, most professional liability insurers discontinued use of‘occurrence’policies and offered professional liability coverage only on a ‘claims made’ basis”).

 Como aclaráramos en Torres v. E.L.A., 130 D.P.R. 640 (1992), previamente este Tribunal había adoptado el término “siniestro” como traducción de la palabra inglesa “occurrence”. Véase Albany Ins. Co. v. Cía Des. Comercial P.R., 125 D.P.R. 421 (1990). Sin embargo, a partir de Torres v. E.L.A., supra, pág. 645 esc. 3, hemos continuado designando las ocurrence policies como “pólizas de ocurrencia”, por ser la forma en que comúnmente se les nombra en el campo de seguros de Puerto Rico.

 Véase el esc. 16 de esta opinión.

 Ciertos autores han exaltado los beneficios de las pólizas de descubrimiento vis-á-vis las pólizas de ocurrencia. Asimismo, existen voces disidentes sobre las difi-cultades que éstas acarrean. Véase B. Works, Excusing Nonoccurrence of Insurance Policy Conditions in Order to Avoid Disproportionate Forfeiture: Claims-Made Formats as a Test Case, 5 Conn. Ins. L.J. 505 (1998/1999).

 Históricamente, se usaban las pólizas de ocurrencia para asegurar la res-ponsabilidad por impericia médica. Empero, debido a la denominada “crisis de im-pericia” de las décadas de 1970 y 1980 —causada por el aumento en reclamaciones y los montos de los daños— las aseguradoras concluyeron que no podían costear la cubierta prospectiva ilimitada que resultaba de las pólizas de ocurrencia. Appleman, supra, Sec. 130.1, pág. 234. En otras áreas, el uso de las pólizas claims made ha recibido mucha resistencia. Keeton, op. cit., pág. 599.

 No obstante, también conllevan ciertas desventajas para el asegurado. Prin-cipalmente, éste carga con la incertidumbre de los costos de reclamaciones futuras y el aumento en las primas para asegurar el riesgo de posibles reclamaciones por eventos pasados. Véanse: Keeton, op. cit., pág. 599; R.H. Long, The Law of Liability Insurance, Nueva York, Ed. Matthew Bender, 2006, Vol. 3, págs. 12.90-12.90.1.

 En Torres v. E.L.A., supra, pág. 650, la cláusula en cuestión, en lo perti-nente, leía como sigue:
“The Company will pay on behalf of the insured:
“COVERAGE M-INDIVIDUAL PROFESSIONAL LIABILITY
“All sums which the insured shall be legally obligated to pay as damages because of injury to which this insurance applies caused by a medical incident occurring [sic] subsequent to the retroactive date, for which claim is first made against the insured and reported to the company during the policy period, arising out of the practice of the insured’s profession as a physician, surgeon or dentist.” (Énfasis en el original.)

 Previamente, en Saavedra v. Joyería Gordons, Inc., 120 D.P.R. 360 (1988), nos expresamos brevemente sobre las pólizas claims made, pero el caso versaba sobre una póliza de ocurrencia.

 Es común entre juristas denominar este tipo de póliza claims made como estándar, tradicional o pura. La póliza claims made tradicional provee una cubierta retroactiva ilimitada, pero no incluye una cubierta prospectiva. Appleman, supra, Sec. 130.1, págs. 219 y 231.

 El tipo de póliza analizada en Torres v. E.L.A., supra, ha sido denominada en inglés como una claims-made and reported policy. Es más restrictiva que la póliza claims made tradicional y puede o no tener fecha de retroactividad.

 Cabe señalar que las pólizas en Torres v. E.L.A., supra, y en S.L.G. FrancisAcevedo v. SIMED, 176 D.P.R. 372 (2008), también requerían que el incidente médico ocurriera en o después de la fecha de retroactividad, como la póliza del caso de autos. No obstante, en ambos casos no fue necesario abundar sobre tal restricción.

 Desde que las pólizas claims made fueron desarrolladas, ha existido presión por parte de las aseguradoras de permitir la inclusión de cláusulas de retroactividad. Holmes, op. cit., pág. 222.

 Dado que las pólizas de seguros que se venden en Puerto Rico son, de ordi-nario, pólizas modelos de los distintos tipos de seguros que se venden en Estados Unidos, la jurisprudencia federal y estatal que las interpreta tendrá un carácter persuasivo en nuestra jurisdicción. Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 157 (1996).
A pesar de que diversas jurisdicciones han aceptado la validez de las fechas de retroactividad limitada, en Sparks v. St. Paul Ins. Co., 100 N.J. 325 (1985), el Tribunal Supremo de Nueva Jersey concluyó que una póliza sin cubierta retroactiva se aparta de la cubierta tradicional de este tipo de póliza, siendo significativamente *16 más limitada, por lo que se apartaba de las expectativas objetivas razonables del asegurado y violaba la política pública. No obstante, el Tribunal reconoció que en algunos casos la falta de cubierta retroactiva podría ser razonable y prevista como, por ejemplo, cuando en una negociación de buena fe entre las partes, el asegurado seleccionó una póliza con cubierta retroactiva limitada con conocimiento de sus restricciones. En Sparks v. St. Paul Ins. Co., supra, la póliza claims made no tenía fecha de retroactividad durante el primer año. Las renovaciones posteriores tenían como fecha de retroactividad el día de efectividad de la primera póliza. No obstante, la razón por la cual se denegó la cubierta fue que la aseguradora fue notificada de la reclamación, luego de la cancelación de la póliza por falta de pago.

 La demanda fue interpuesta contra Advanced antes de que ésta y SIMED comenzaran la relación contractual. Posteriormente, y ya en el periodo de vigencia de la póliza, se presentó una demanda enmendada que fue notificada a SIMED. Por lo tanto, solamente se dio la notificación a SIMED en el periodo de vigencia de la póliza.

 Exposición de Motivos de la Ley Núm. 4 (1986 Leyes de Puerto Rico 730, 733).

 No obstante, como bien señala Rolando Cruz: “La aprobación previa de los formularios por el Comisionado sólo pretende consignarle a éstos un facie de correc-ción para ambas partes contratantes.” R. Cruz, Derecho de Seguros, San Juan, Ed. J.T.S., 1999, pág. 33.